No. 94-491

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

      Plaintiff and Respondent,

   v.

ANTONIO RUBIN LEYBA,

      Defendant and Appellant.

FILED

JAN 09 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable James E. Purcell, Judge presiding

COUNSEL OF RECORD:

     For Appellant:

        Ian Christopherson, Christopherson Law
Offices, Las Vegas, Nevada

     For Respondent:

        Hon. Joseph P. Mazurek, Attorney General,
Cregg Coughlin, Assistant Attorney General,
Helena, Montana

        Robert M. McCarthy, Silver Bow County
Attorney, Brad Newman, Deputy County Attorney,
Butte, Montana

Submitted on Briefs:  November 30, 1995

Decided: January 9, 1996

Filed:

_____
Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Defendant Antonio R. Leyba appeals from a jury verdict of the Second Judicial District Court, Silver Bow County, finding him guilty of deliberate homicide.  We affirm.

The issues on appeal are as follows:

1.    Was the defendant denied the effective assistance of counsel?

2.    Did the District Court err in not instructing the jury *sua sponte* on the elements of mitigated deliberate homicide?

3.    Was there sufficient evidence to support the jury verdict?

## FACTS

On January 2, 1994, a Butte resident discovered that a group of teenagers had held an unauthorized drinking party in his home while he was away for the New Year's holiday.  He later determined that three of his rifles were missing and assumed the teenagers had stolen them.  He directed his son-in-law, defendant Antonio R. Leyba, to see if he could find out the serial numbers on the missing rifles.  Actually the rifles had not been stolen by the teenagers, but had been pawned by Leyba at the Mountain Man pawn shop in Butte.

On the morning of January 3, 1994, a clerk in a store adjacent to the pawn shop heard shouting and other noises coming from the pawn shop.  The clerk called the police after being told by a man who had come into her shop that there was a "mess" next door.  The

two police officers who arrived on the scene discovered that the pawn shop clerk, Charlie Miller, had been bludgeoned and stabbed to death. There was a large amount of blood on the floor which contained shoe prints. The officers discovered a handle from a hatchet that appeared to have blood on it and eventually discovered the head to the hatchet on a top shelf in the back room. Officers also found a bloody fingerprint which the Forensic Sciences Division of the Montana Department of Justice later positively identified as Leyba's fingerprint.

When officers questioned Leyba, he told them he was at the pawn shop on the morning of January 3, 1994, to get serial numbers for rifles, but because the store was crowded he left to check with other sport shops in town. After officers told Leyba about the physical evidence they had collected, including bloody shoe prints which matched his athletic shoes, and his bloody fingerprint, Leyba changed his story. He said that he saw two men take Miller into the back room and beat him up, but that after seeing the body he decided to leave. After officers told Leyba his story was not credible, he admitted the murder.

When officers searched Leyba's residence and vehicle they discovered the rifles, a three-inch skinning knife, an eleven-inch knife, one framing hammer, one claw hammer, athletic shoes and a cordless telephone, all of which had human blood on them. Although he admitted committing the murder, Leyba claimed he had acted in self-defense. Leyba is 6' tall and weighs approximately 200

3

pounds.  He suffered no wounds in the altercation.  Miller, who was approximately 5'4" tall and weighed 135 pounds, suffered various defensive wounds to his hands and wrists in addition to the fatal blows.

On January 27, 1994, Leyba was charged with deliberate homicide pursuant to § 45-5-102(1)(a), MCA (1993). On June 20-23, 1994, he was tried by a jury and found guilty.  He was sentenced to 100 years in prison, plus an additional 10 years for the use of dangerous weapons in commission of the offense, with 25 years suspended.  The District Court denied Leyba's post-trial motion to alter or amend the judgment and this appeal followed.

## ISSUE 1

Was the defendant denied the effective assistance of counsel?

Leyba claims his Sixth Amendment right to effective assistance of counsel was violated because his defense counsel only offered a deliberate homicide jury instruction.  On appeal, Leyba contends his defense was based on mitigating circumstances and his defense counsel should have offered an instruction which would have allowed the jury to consider whether he was guilty of mitigated deliberate homicide.

We review claims of ineffective assistance of counsel based on a two-part test set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674.  The defendant must first establish that counsel's performance was deficient in that counsel did not act within the range of competence demanded of

4

attorneys in criminal cases. Strickland, 466 U.S. at 687; Walker v. State (1993), 261 Mont. 1, 6, 862 P.2d 1, 4; State v. Senn (1990), 244 Mont. 56, 59, 795 P.2d 973, 975. To satisfy the second prong of the test, the defendant must establish that the deficient performance prejudiced him so as to deprive him of a fair trial. Strickland, 466 U.S. at 687; Walker, 862 P.2d at 4. The defendant must prove both elements of the test and the burden is heavy on a defendant seeking to reverse a judgment on the grounds of ineffective assistance of counsel. Walker, 862 P.2d at 4 (citing State v. McColley (1991), 247 Mont. 524, 526, 807 P.2d 1358, 1360).

We addressed a claim similar to Leyba's in State v. Sheppard (1995), 270 Mont. 122, 890 P.2d 754 (Sheppard II). After we affirmed the defendant's conviction for sexual intercourse without consent in State v. Sheppard (1992), 253 Mont. 118, 832 P.2d 370 (Sheppard I), the defendant sought post-conviction relief in the district court. Sheppard claimed ineffective assistance of counsel because his attorney failed to offer a jury instruction on a lesser offense. In affirming the district court's denial of post-conviction relief, we stated that "when defense counsel makes a tactical decision to forgo an instruction that is inconsistent with the defense, we will not find error supporting an ineffective assistance of counsel claim." Sheppard II, 890 P.2d at 758 (citing State v. Johnson (1993), 257 Mont. 157, 163, 848 P.2d 496, 499). Furthermore, we have stated that in order to constitute ineffective assistance, acts of counsel "must stem from neglect or ignorance

5

rather than from informed, professional deliberation." State v. Paulson (1991), 250 Mont. 32, 44, 817 P.2d 1137, 1144-45.

The record indicates that Leyba's defense at trial was that he killed Miller in self-defense. Defense counsel provided notice to the State that he would rely on a self-defense theory and that the issue for the jury would be whether the use of force by Leyba was justified. Defense counsel presented witnesses who testified that Leyba was a peaceful person and a good father and husband. Witnesses testified that Miller was in a bad mood on the morning he was killed. Defense counsel presented psychological testimony to explain that Leyba was faced with a "fight or flight" response to a life-threatening situation. Leyba claimed the brutal killing was an emotionally charged response to **a** violent attack by Miller. All of this evidence was consistent with Leyba's self-defense **claim**

Leyba also made it clear to the District Court that he did not want the jury to consider the mitigated deliberate homicide instructions. After the State had requested that the mitigated deliberate homicide instructions be withdrawn, the following exchange took place:

> DEFENSE COUNSEL: I've spoken about this with my client, and we agree those will be withdrawn and we will not offer a mitigated deliberate --

> TONY LEYBA: I want it deliberate. If they are going to find me guilty, I want it deliberate.

The District Court then withdrew the mitigated deliberate homicide instructions.

Leyba and his attorney made a tactical decision to seek absolute acquittal on the theory of self-defense. Such a decision was consistent with Leyba's theory of self-defense and was a trial strategy based on informed professional deliberation. It was not the result of neglect or deficient performance on the part of defense counsel.

A similar situation was presented in Bashor v. Risley (9th Cir. 1984), 730 F.2d 1228, *cert. denied* (1984), 469 U.S. 838, where a defendant convicted of deliberate homicide argued that his trial counsel was ineffective for failing to give the jury the option of convicting him of negligent or mitigated deliberate homicide. In rejecting his argument, the Ninth Circuit stated as follows:

> It is true that counsel did not offer a negligent homicide instruction and that he objected to the mitigated deliberate homicide instruction. The record discloses that counsel did so not out of ignorance of the law but as the result of a tactical decision that the jury should be forced to the choice of finding Bashor guilty of deliberate homicide or acquitting him outright. With the benefit of hindsight we know that this strategy was incorrect; however, it did not constitute ineffective assistance of counsel.

Bashor, 730 F.2d at 1241.

Now that hindsight demonstrates his trial strategy was not successful, Leyba seeks a second opportunity to try the case under a different theory. We will not, however, second-guess trial tactics and strategy. Walker, 862 P.2d at 4; State v. Johnson (1993), 257 Mont. 157, 163, 848 P.2d 496, 499. The performance of Leyba's counsel was not deficient and was within the range of competence demanded of attorneys in criminal cases.

7

Having determined that Leyba's claim does not satisfy the first element of the Strickland test, it is unnecessary to analyze the second element of the test. We conclude that Leyba was not denied his constitutional right to effective assistance of counsel.

ISSUE 2

Did the District Court err in not instructing the jury *suasponte* on the elements of mitigated deliberate homicide?

We review jury instructions in criminal cases to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. State v. Long (Mont. 1995), 52 St. Rep. 1204, 1205. See also State v. Brandon (1994), 264 Mont. 231, 237, 870 P.2d 734, 737 (citing State v. Lundblade (1981), 191 Mont. 526, 529-30, 625 P.2d 545, 548).

Leyba claims it was error for the District Court not to instruct the jury *suasponte* on the elements of mitigated deliberate homicide. He contends that the jury was faced with an all or nothing choice between conviction and acquittal. Leyba relies on Beck v. Alabama (1980), 447 U.S. 625, 100 S. Ct. 2382, 65 L. Ed. 2d 392, to argue that the evidence clearly weighs toward the mitigated charge and failure of the District Court to so instruct the jury violated his due process rights. However, in Beck the issue was an Alabama statute which prohibited the jury from considering a lesser included offense. Furthermore, four years following Beck the Supreme Court stated that:

> Although the Beck rule rests on the premise that a lesser
> included offense instruction in a capital case is of

8

> benefit to the defendant, there may well be cases in which the defendant will be confident enough that the State has not proved capital murder that he will still want to take his chances with the jury. If so, we see little reason to require him . . to give the State what he perceives as an advantage--an opportunity to convict him of a lesser offense if it fails to persuade the jury that he is guilty of capital murder.

*Spaziano v. Florida* (1984), 468 U.S. 447, 456-57, 104 S. Ct. 3154, 3160, 82 L. Ed. 2d 340, 350.

In *Sheppard I*, the defendant, like Leyba, argued that the district court should have instructed the jury *sua sponte on a* lesser offense. There we stated that, upon request, a defendant is entitled to an instruction about a lesser offense if the evidence would permit a jury to find him guilty of the lesser offense and acquit him of the greater. *Sheppard I*, 832 P.2d at 373. The rule in Montana and in the majority of states is that if a request for such an instruction is not made, the appellate court will not overturn the conviction absent plain error. *Sheppard I*, 832 P.2d at 373. We held that

> the prosecution and defense must have the option of foregoing a lesser charge instruction for strategic reasons. . . . [M]andatory *sua sponte* jury instruction on lesser offenses is inconsistent with Montana law and our public policy of allowing trial counsel to conduct the case according to his or her own strategy . . .

*Sheppard I*, 832 P.2d at 373.

In the present case, the record indicates that Leyba chose to take his chances that the jury would not convict him of deliberate homicide based on his theory of self-defense. Not only did Leyba fail to object to the State's requested withdrawal of the mitigated

9

deliberate homicide instructions, he stated on the record that if the jury was to find him guilty, he wanted it deliberate.  Unlike Beck, where a state statute foreclosed the opportunity for the jury to consider a lesser offense, Leyba voluntarily crafted his own trial strategy to avoid the jury considering the lesser charge. He cannot now with the benefit of hindsight be heard to complain that the instructions were insufficient and that the result violates his due process rights.

We conclude that, as a whole, the jury instructions fully and fairly instructed the jury on the law applicable to the case.  The District Court did not err in failing to instruct the jury *sua sponte* on the offense of mitigated deliberate homicide.

ISSUE 3

Was there sufficient evidence to support the jury verdict?

We review the sufficiency of the evidence to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  State v. Arlington (1994), 265 Mont. 127, 146, 875 P.2d 307, 318 (quoting State v. Cyr (1987), 229 Mont. 337, 339, 746 P.2d 120, 122).

Leyba argues there was insufficient evidence to support the jury verdict.  He claims he did not have a motive to deliberately plan the death of Miller, nor did he have the criminal intent to kill Miller.  Leyba's argument is based upon *mens rea* requirements that are no longer the law in Montana.

10

Section 45-5-102(1)(a), MCA (1993), provides that "[a] person commits the offense of deliberate homicide if: (a) he purposely or knowingly causes the death of another human being . . . ." The State is not required to prove motive, nor is it required to establish that the killing was premeditated. We have stated:

> The State need not establish a specific purpose to kill. Nor must it show that death was the result of deliberation other than the deliberation implicit within the statutory definitions of "purposely" and "knowingly."

State v. Weinberger (1983), 204 Mont. 278, 289-90, 665 P.2d 202, 208-09 (citing State v. Sharbono (1977), 175 Mont. 373, 392, 563 P.2d 61, 72-73). If the act which causes the death is done purposely or knowingly, deliberate homicide is committed even if death is not the intended result. State v. McKimmie (1988), 232 Mont. 227, 231-32, 756 P.2d 1135, 1138 (citing State v. Sigler (1984), 210 Mont. 248, 260, 688 P.2d 749, 755).

In Weinberger, we cited the following Compiler's Comments to § 45-5-102, MCA, and then stated:

> " 'Purposely' is the most culpable mental state and implies an objective or design to engage in certain conduct, *although not particularly toward some result.* 'Knowingly' . . . refers to a state of mind in which a person acts, *while not toward a certain objective, at least with full knowledge of relevant facts and circumstances.* Together these terms replace the concepts of malice and intent . , . premeditation is no longer an element of homicide . . . ."

> We agree. We have previously recognized the legislative changes in the requirements of *mens rea. State v. Sharbono,* supra, 175 Mont. at 392-394, 563 P.2d at 72-73; *State v. Coleman* (1978), 177 Mont. 1, 30-31, 579 P.2d 732, 750, cert. denied, 448 U.S. 914, 101 S.Ct. 34, 65 L.Ed.2d 1177. Here, defendant's objection to Instruction No. 11

11

on the ground that it was incomplete is founded upon *mens rea* requirements that are no longer the law **in** Montana.

Weinberger, 665 P.2d at 209. Leyba's arguments in regard to **motive** and premeditation are therefore without **merit.**

Leyba goes on to argue that there was no direct evidence which proved deliberate homicide. Evidence was presented to the jury concerning Leyba's awareness and knowledge of his actions. Leyba admitted to not liking Miller and to chasing him around the store. The forensic evidence proved that Leyba bludgeoned Miller's head with one or more blunt instruments, breaking the skull open "like an eggshell." Miller's throat had been cut six times, cutting both the carotid artery and his internal jugular vein. Leyba also stabbed Miller nine times in the back when Miller was immobile. Leyba then concealed the fact he had been at the pawn shop and did not tell anyone he had been attacked by Miller.

When Leyba fled the murder scene he took four of the murder weapons with him and concealed them in his vehicle. He washed Miller's blood off his hands and face and removed his outer clothing to conceal the fact that he had been involved in a brutal attack. There was sufficient evidence for the jury to find that Leyba acted knowingly, because even if death was not the intended result, he was aware of the high probability that such a result would be caused by his conduct. Section 45-2-101(33), MCA (1993).

The jury considered all the evidence presented, including Leyba's own admission, his bloody fingerprint and shoe print, the nature of the injuries, and his possession and concealment of the

12

murder weapons. The jury did not find Leyba's theory of self-defense credible. We conclude there was sufficient evidence to support Leyba's conviction of deliberate homicide pursuant to § 45-5-102(1)(a), MCA (1993), and affirm the jury's verdict and the District Court's judgment and order on the matter.

_____
Justice

**We concur:**

_____
Chief Justice

_____

_____

_____
Justices

13