NO.   95-268

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

THE STATE OF MONTANA,

    Plaintiff and Respondent,

    v.

DAVID SYLVESTER GONZALES,

    Defendant and Appellant

FILED

OCT 24 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Big Horn,
The Honorable Maurice R. Colberg, Jr., Judge
presiding.

COUNSEL OF RECORD:

    For Appellant:

    James L. Vogel, Hardin, Montana

    For Respondent:

    Honorable Joseph P. Mazurek, Attorney General;
Pamela Collins, Assistant Attorney General,
Helena, Montana

    Christine A. Cooke, Big Horn County Attorney,
Hardin, Montana

Submitted on Briefs:  August 29, 1996

Decided:  October 24, 1996

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant David Gonzalez appeals the Thirteenth Judicial District Court, Big Horn County, jury verdict which found him guilty of felony assault against Ronald Thompson. We affirm.

The following two issues are raised on appeal:

1. Did the District Court properly instruct the jury on the affirmative defense of justifiable use of force?

2. Did the jury properly reject the defendant's affirmative defense of justifiable use of force?

BACKGROUND

The following facts come from the State's case-in-chief. On August 7, 1994, David Gonzales went to the Wagon Wheel Bar in Miles City, Montana, at about 11:30 p.m. with his ex-wife, Marta Bergman. Also at the bar that evening was Ronald Thompson, an older man who was "acting strange," telling people he was a karate expert and a Vietnam veteran. While Gonzales and Bergman were dancing to music performed by Randy McCallister, Thompson started dancing between them, making shadowboxing moves, but not saying anything or making any aggressive motions towards them.

Because Thompson was shadowboxing and "acting strange" around McCallister's band equipment, McCallister told Thompson to behave. Thompson stopped what he was doing and repeatedly apologized. According to Jan Small, the owner of the Wagon Wheel, she received no complaints about Thompson.

After McCallister warned Thompson to behave around the band equipment, Gonzales approached McCallister and tried to stick up

2

for Thompson. McCallister responded that it was not any of Gonzales' business. Gonzales then hit McCallister, who hit him back. Richard Duncan, an acquaintance of McCallister, broke up the fight. McCallister went back on stage and prepared to resume playing with the band. Gonzales exited the bar after Jan Small asked him to leave.

Approximately five minutes later, Gonzales reentered the bar carrying something silver in his hand. He headed back to confront McCallister, and in McCallister's direction, yelled, "Hey, bitch. You want to do it right. Let's go outside." At the same time, Thompson was sitting alone in the bar and watching the crowd. He got out of his chair, did an about-face, and hit Gonzales in the face. Duncan observed Gonzales, standing, slash Ronald Thompson with a carpet knife. Thompson grabbed Gonzales, who tried to stab Thompson in the back with the knife. Duncan approached the melee and grabbed Gonzales' wrist, ordering him to drop the knife. Duncan hit Gonzales in the forehead and he dropped the knife. Duncan then knocked Thompson and Gonzales to the ground. When the three fell, Gonzales was on the bottom, Thompson in the middle, and Duncan on top.

When the three got up, Thompson was bleeding profusely from a deep laceration on his left arm. He also suffered smaller lacerations to his lower chest and back. Gonzales was uninjured except for a black eye. Immediately thereafter, deputies from the Big Horn County Sheriff's Department arrived at the scene and

arrested Gonzales. They also administered first aid to Thompson before transporting him to the hospital.

Thompson could not be found at the time of trial and was unavailable to testify. Sheriff's deputies testified that Thompson did not appear to be dangerous and they did not feel threatened by him, although he did appear confused. Two officers also testified that the injury to Thompson's left arm appeared to be a defensive-type wound.

At trial, Gonzales testified on his own behalf. He claimed that during one of the band's breaks, McCallister made a derogatory comment to him about his ex-wife. Gonzales poked McCallister in the stomach. As Gonzales stood up to leave, McCallister hit him from behind. Gonzales then headed towards the front door of the bar, but before reaching it, he decided to find out why McCallister had hit him. Gonzales faced the band where McCallister was playing and yelled, "Hey bitch. You want to do it right. Let's go outside."

According to Gonzales, McCallister noticed him and nodded to Thompson. Thompson headed toward Gonzales, doing karate moves. Gonzales was afraid because Thompson was fifty pounds larger than he, he had just been beaten by McCallister, and he had been told that Thompson was a Vietnam veteran and a karate expert. Gonzales had a carpet knife in his wallet. He removed it as a warning for Thompson to stay away. Thompson punched Gonzales in the eye. Gonzales admitted at trial, that at that point, he could have turned around and run out the back door of the bar. After hitting

4

Gonzales, Thompson tackled him, and the two fought on the floor until Duncan separated them.

Gonzales was charged by information with felony assault pursuant to § 45-5-202(2)(a), MCA. He pled not guilty. Following a jury trial, Gonzales was found guilty. The District Court sentenced him to a term of eight years in the Montana State Prison, plus two years consecutively for the use of a weapon. Gonzales appeals.

1. Did the District Court properly instruct the jury on Gonzales' affirmative defense of justifiable use of force?

Gonzales asserts that the District Court committed reversible error at trial because it did not properly instruct the jury regarding his affirmative defense of justifiable use of force. He contends that the jury was instructed that the defense was not available to an aggressor, but that the jury was not instructed on the exceptions to the "no aggressor" rule contained in § 45-3-105(2)(a) and (b), MCA.

Section 45-3-105(2)(a) and (b), MCA, provides:

Use of force by aggressor. The justification described in 45-3-102 through 45-3-104 is not available to a person who: (2) purposely or knowingly provokes the use of force against himself, unless: (a) such force is so great that he reasonably believes that he is in imminent danger of death or serious bodily harm and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or serious bodily harm to the assailant; or (b) in good faith, he withdraws from physical contact with the assailant and indicates clearly to the assailant that he desires to withdraw and terminate the use of force but the assailant continues or resumes the use of force.

During settlement of jury instructions, the State offered State's proposed instruction number 15, which restates § 45-3-105(2)(a), MCA. Proposed instruction number 15 stated:

> The use of force in defense of a person is not available to a person who purposely or knowingly provokes the use of force against himself unless such force is so great that he reasonably believes that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or serious bodily harm to the assailant.

Defense counsel objected to the State's proposed instruction number 15, stating that there had been no evidence presented at trial to support it, and that it implied that Gonzales had provoked Thompson. Defense counsel admitted there was evidence that Gonzales provoked McCallister, but not Thompson. The District Court initially accepted the State's proposed instruction 15, and allowed the defense to argue that there was no evidence that Gonzales was the aggressor. Gonzales then offered defense proposed instruction number 1, which stated, "No person has a duty to retreat from the use of unlawful force against him." The State objected to this instruction because it conflicted with its proposed instruction number 15 and was an incorrect statement of the law.

The District Court then decided not to accept either proposed instruction. Instead, it gave the following instructions regarding justifiable use of force:

INSTRUCTION NO. 8

> The defense of justifiable use of force is an affirmative defense and the defendant has the burden of producing sufficient evidence on the issue to raise a reasonable doubt of his guilt.

If you find that he was justified in the use of force, you must find him not guilty.

INSTRUCTION NO. 9

A person is justified in the use of force or threat to use force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or serious bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or serious bodily harm to himself.

INSTRUCTION NO. 10

The defendant has pleaded justification in the use of force in this case. As such he has the burden of producing sufficient evidence of justification in the use of force to raise a reasonable doubt of his guilt. YOU are to consider the following requirements of the law in determining whether the use of force claimed by defendant was justified:

1) The defendant must not be the aggressor;
2) The danger of harm to the defendant must be a present one [and not merely threatened at a future time and not made by a person without the present ability of carrying out a threat];
3) The force threatened against the defendant must be unlawful;
4) The defendant must actually believe that the danger exists, that is, use of force by him is necessary to avert the danger and that the kind and amount of force which defendant uses is necessary;
5) The defendant's belief, in each of the aspects described, is reasonable even if he is mistaken.

You are further advised that even if you determine that the use of force by defendant was not justified, the state still has the duty to prove each of the elements of the crime charged beyond a reasonable doubt.

(Bracketed material in original.)

This Court reviews jury instructions in a criminal case to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. State v.

7

Leyba (Mont. 1996), 915 P.2d 794, 797, 53 St.Rep. 7, g. District courts have broad discretion in formulating jury instructions. State v. Ross (1995), 269 Mont. 347, 358, 889 P.2d 161, 167. While a defendant is entitled to have instructions on his theory of the case, he is not entitled to an instruction concerning every nuance of his argument. Ross, 889 P.2d at 167.

Gonzales failed to object to or offer other instructions regarding the "no aggressor" rule contained in instruction number 10. He stated that he did not want the jury instructed on the exceptions to the "no aggressor" rule because his theory of the case was that Gonzales was not the aggressor. Because Gonzales did not raise an objection before the District Court, he is barred from raising the issue on appeal. See § 46-20-104, MCA. State v. Santos (1995), 273 Mont. 125, 133, 902 P.2d 510, 514-15.

Gonzales states in his reply brief that even though he did not object to the District Court's failure to instruct the jury on the "no aggressor" rule, this Court should review the issue as plain error. Gonzales claims this error prevented him from receiving a fair trial because it inhibited his ability to use the defense of justifiable use of force.

We recently clarified the common law plain error rule in State v. Finley (Mont. 1996), 915 P.2d 208, 53 St.Rep. 310. We held that we would review claimed errors that implicate a criminal defendant's fundamental constitutional rights under the plain error rule only sparingly and only where failing to do so might result in a manifest miscarriage of justice, leave the question of the

fundamental fairness of the proceedings unsettled, or compromise the integrity of the judicial process. Finley, 915 P.2d at 215.

Here, we conclude that declining to review Gonzales' challenges to the District Court's failure to submit alternative jury instructions on the "no aggressor" rule does not rise to the level of a manifest miscarriage of justice, will not leave unsettled the question of the fundamental fairness of the trial or proceedings, nor will it compromise the integrity of the judicial process. See Finley, 915 P.2d at 215; Seyferth v. State (Mont. 1996), P.2d ___, 53 St.Rep. 698.

Accordingly, we decline to address the issue of whether the District Court erred when it refused to submit the State's proposed jury instruction number 15 and defense jury instruction number 1 as alternative jury instructions to the "no aggressor" rule, an issue which Gonzales raises for the first time on appeal.

As an additional argument, Gonzales argues that his counsel was ineffective for declining an instruction on the exceptions to the "no aggressor" rule. This Court reviews claims of ineffective assistance of counsel based on the two-part test adopted in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The defendant must first establish that counsel's performance was deficient in that counsel did not act within the range of competence demanded of attorneys in criminal cases. Walker v. State (1993), 261 Mont. 1, 6, 862 P.2d 1, 4. To satisfy the second prong of the test, the defendant must also establish that the deficient performance prejudiced him such that he was

deprived of a fair trial.  <u>Strickland,</u> 466 U.S. at 687, 104 S.Ct. at 2064.  The defendant must prove both prongs of this test and bears a heavy burden when he desires that his conviction be reversed on the grounds of ineffective assistance of counsel. <u>Leyba</u>, 915 P.2d at 796.

Acts of counsel must stem from neglect or ignorance rather than from informed, professional deliberation in order to be ineffective assistance.  State v. Paulson (1991), 250 Mont. 32, 44, 817 P.2d 1137, 1144-45.  When defense counsel decides, as a tactical decision, to decline a jury instruction that is not consistent with the defense, this Court will not find that counsel was ineffective.  State v. Sheppard (1995), 270 Mont. 122, 890 P.2d 754, 758.  This Court will not second-guess trial tactics and strategy.  <u>Leyba</u>, 915 P.2d at 797.

The record demonstrates that Gonzales' defense at trial was that Thompson was the initial aggressor and that Gonzales used the amount of force that he reasonably believed was necessary to defend himself against Thompson.  No witness for either the prosecution or defense testified that Gonzales was the aggressor in the fight between Thompson and himself.  Witnesses testified that Thompson told people at the bar that he was a karate expert.  After hearing Gonzales yell threats at McCallister, Thompson approached Gonzales and hit him in the face.  Thompson was fifty pounds larger than Gonzales.  Gonzales testified that he was frightened of Thompson and held up the knife in an effort to scare him.  When Thompson

10

grabbed Gonzales and the two fell to the floor, Thompson was on top.

The evidence presented at trial is consistent with Gonzales' defense theory that Thompson was the aggressor. Defense counsel argued in both his opening and closing that Thompson, not Gonzales, was the aggressor. The decision to forego the jury instruction on the exceptions to the "no aggressor" rule was a trial strategy based on informed professional deliberation and was not the result of neglect or ignorance. The fact that this strategy proved unsuccessful does not mean that counsel was ineffective.

We therefore conclude that defense counsel's performance was not deficient. Because Gonzales has failed to meet the first prong of the <u>Strickland</u> test, we do not address the second.

2. Did the jury reasonably reject Gonzales' affirmative defense of justifiable use of force?

Gonzales argues that his conviction must be reversed because there was no evidence presented at trial on which the jury could find that he was the aggressor towards Thompson. This is contrary to Gonzales' first position that his conviction should be reversed because the court failed to instruct the jury on the exceptions to the "no aggressor" rule. Gonzales argues that if he was not the aggressor, then his use of the knife was reasonable and reasonable doubt had to be created in the minds of the jury by this defense.

The standard of review for sufficiency of evidence in a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

11

reasonable doubt.  State v. Arlington (1994), 265 Mont. 127, 146, 875 P.2d 307, 318.

The defense of justifiable use of force is an affirmative defense and the defendant has the burden of producing evidence sufficient to raise a reasonable doubt of his guilt.  See § 45-3-115, MCA; State v. Grady (1975), 166 Mont. 168, 175, 531 P.2d 681, 684.  To establish a defense of justifiable use of force, the defendant must prove: (1) that the defendant was not the aggressor; (2) that the defendant reasonably believed that he was in imminent danger of unlawful harm; and (3) that the defendant used reasonable force necessary to defend himself.  Arlington, 875 P.2d at 318. Whether the force used was reasonable under the circumstances is a factual determination within the province of the jury.  Arlington, 875 P.2d at 314.

Based on the evidence presented at trial, Gonzales does not meet the third prong for the defense of justifiable use of force. When the evidence is viewed in the light most favorable to the prosecution, the jury, as a rational trier of fact, could reasonably conclude that the force Gonzales used against Thompson was unreasonable.  Thompson suffered a deep laceration which extended the length of his lower arm.  The jury heard evidence that this wound was a defensive-type injury.  Thompson also suffered several lacerations to his lower chest and back.  Gonzales was not injured after his confrontation with Thompson, other than having a black eye.  The jury reasonably concluded that the force Gonzales used against Thompson was excessive.

12

In summary, we hold that the District Court did not err when it instructed the jury on the defense of justifiable use of force according to Gonzales' theory of the case--that is, that Thompson was the initial aggressor. Defense counsel was not ineffective for declining an instruction on the exceptions to the "no aggressor" rule, which was consistent with Gonzales' theory of the case. Finally, the jury could properly find, based on all the evidence presented, that Gonzales did not meet all three requirements for the affirmative defense of justifiable use of force because he did not use reasonable force to defend himself.

Appellant's conviction is affirmed.

_____
                         Chief Justice

We concur:

_____

_____

_____

_____
                  Justices

13

Justice Terry N. Trieweiler dissenting.

I dissent from the **majority's** conclusion that the attorney for David Sylvester Gonzales was not ineffective when he objected to the State's proposed instruction #15 which was essential to the jury's complete understanding of the law related to justifiable use of force.

Gonzales's defense was based on his assertion that he was not the aggressor in his altercation with Ronald Thompson. However, it was the State's theory that Gonzales was the aggressor toward Randy McCallister and that his altercation with Thompson was the result of that act of aggression.

There was evidence from which the jury could find in favor of either the defendant's theory or the State's theory. It was, therefore, necessary for the jury to be fully instructed on the law that pertained to justifiable use of force, and in particular, that part of the law which provides a defense to a person who is initially the aggressor, but exhausts every reasonable means to escape danger presented by someone who responds to his aggression.

The **majority** opinion suggests that to instruct the jury regarding the law which was applicable in the event it found that Gonzales was the aggressor would have been inconsistent with Gonzales's defense that he was not the aggressor. I disagree.

It was perfectly consistent to argue that even though Gonzales was not the aggressor, if the jury found otherwise he was still entitled to assert justifiable use of force as a defense under limited circumstances. In fact, I conclude that the normal range

14

of competence demanded of criminal defense attorneys required that Gonzales's attorney be prepared to argue both scenarios. In other words, while it was Gonzales's position that he was not the aggressor, a reasonable defense required that the jury be informed that if they disagreed with his argument and accepted the State's argument, it was still entitled to acquit him, in spite of that fact, if it found that there was no reasonable means by which he could have escaped from the danger that Thompson presented.

In this case, the jury was not fully instructed on the law related to the reasonable use of force and there is no way to know whether a complete and correct instruction would have produced a different result. It is sufficient to note that the law provided Gonzales with a defense, whether the jury found that he was the aggressor or was not the aggressor, and he was denied that defense based on his counsel's objection to the appropriate and necessary statement of law.

I conclude that that objection constituted ineffective representation of counsel, and for that reason would reverse the judgment of the District Court and remand for a new trial with correct instructions on the law.

For these reasons, I dissent from the majority opinion.

_____
Justice

15

October 24, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

James L. Vogel
Attorney at Law
P.O. Box 525
Hardin, MT 59034-0525

Hon. Joseph P. Mazurek, Attorney General
Pamela Collins, Assistant A.G.
Justice Building
Helena, MT 59620

Christine A. Cooke
Big Horn County Attorney
Drawer H
Hardin, MT 59034

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *D. Gallagher*
Deputy