No. 99-431

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 52

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DAVID R. ALIFF,

Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Assistant Appellate Defender, Appellate Defender Office, Helena, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Pamela P. Collins, Assistant Attorney General, Helena, Montana; Michael McGrath, Lewis and Clark County Attorney, Michael Menahan, Deputy Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs: June 22, 2000
Decided: April 5, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 David R. Aliff (Aliff) was convicted in Montana's First Judicial District Court, Lewis and Clark County, of attempted deliberate homicide and sexual intercourse without consent and now appeals. We affirm.

¶2 The issue on appeal is whether or not Aliff's trial counsel was ineffective for not offering an alternative jury instruction regarding the offense of aggravated assault, resulting in unfair prejudice.

## BACKGROUND

¶3 In March 1998, Michelle Hansen (Michelle) met friends for an evening of socializing in Helena, Montana. She consumed numerous alcoholic beverages in the course of the evening, became intoxicated, and proceeded home about 2 a.m. in her car. A co-worker followed her for a ways to make sure she was all right, but did not drive with her all the way to her home. At some point she passed Aliff on the streets, and they waved to each other as they had known each other for a number of years. Upon arrival at her home, she apparently lost consciousness in her car for a short period of time. Her next conscious memory was as a passenger in the car of David Aliff.

¶4 David Aliff had been fishing that evening with his brother-in-law. He went to the home of his brother-in-law after fishing and then departed early in the morning and noticed Michelle driving home. He followed her to her home and Michelle inexplicably ended up in his car.

¶5 Aliff drove Michelle to a fishing access site on Lake Helena and proceeded to rape her both vaginally and anally. When she struggled he struck her in the head several times. After being raped Michelle pulled her slacks on and told Aliff she needed to go to the bathroom. When she left the car he tackled her from behind, pinning her to the ground with her arms behind her. Aliff retrieved a knife from his pocket. Upon hearing a clicking sound, Michelle knew that he had a knife. She screamed. Aliff stabbed her and began cutting her neck, resulting in puncture wounds and deep lacerations, somehow narrowly missing the carotid and superior thyroid arteries and internal jugular vein. Michelle worked one hand free and attempted to stop Aliff from cutting her throat, but to no avail.

¶6 Michelle held her breath to feign death, and Aliff stopped cutting her throat. He dragged her to his car, and placed her head beneath a passenger-side tire and she surmised that he intended to run over her head with the vehicle. Not wanting Aliff to know that she was still alive and then return to kill her with the knife, Michelle squirmed forward so that he might run over some part of her body, but not her head. Aliff proceeded to run over her with his car an unknown number of times, missing her head, but causing fractures to the rib cage and compression of internal organs. He also ran over her legs as evidenced by tire tracks on her body. He then left. When she could no longer see his tail lights, Michelle rose to her feet. The temperature that night was approximately 26 degrees Fahrenheit. She walked some distance to the north over the next several hours, and at approximately 7 a.m. noticed someone outside a home and began yelling to the best of her ability. A Helena firefighter and trained EMT was departing for work, heard her cries and ran toward her. He found her clinging to a barbed-wire fence. Her neck area was caked with dirt, vegetation, hair and blood from the ear-to-ear laceration and puncture wounds. The firefighter summoned an ambulance and Michelle was taken to St. Peter's hospital in Helena. Her core temperature had fallen to as low as 86 degrees, but within a short time her condition stabilized and she identified her attacker as David Aliff.

¶7 A rape examination was performed at the hospital, at which time semen was found. Upon the issuance of a search warrant Aliff's car was seized. Also pursuant to a search warrant, Aliff's bodily fluids were obtained and sent to the Montana State Crime Laboratory in Missoula. Aliff's wife discovered blood on Aliff's pants worn that night, and later found Aliff's blood-covered knife in his robe. These items of evidence were analyzed at the Crime Lab in Missoula. A forensic scientist from the Crime Lab with approximately 25 years of lab and teaching experience testified that Michelle could not be eliminated as the donor of the blood on the knife, while Aliff was eliminated as a possible donor of the blood. Moreover, only one person in 612,000,000 would have the same DNA profile as that found in the blood on the knife. The forensic scientist further testified that only one Caucasian male in 1,193,000,000 would have the same DNA profile as found in the semen extracted from the rape examination. The semen sample was consistent with Aliff's DNA profile. Blood found on the underside of his car also matched Michelle's.

¶8 Aliff was charged by information with attempted deliberate homicide, a felony in violation of §§ 45-5-102 and 45-4-103, MCA, and sexual intercourse without consent, a felony in violation of § 45-5-503, MCA. He initially pled not guilty to both counts, but several months later changed his plea to guilty of the charge of attempted deliberate homicide. The court dismissed the rape charge. Several months later Aliff again changed

his plea to not guilty on both counts, and the court granted the State's motion to reinstate the original charges.

¶9 Aliff testified in his own defense at jury trial and insisted that he did not perpetrate the crimes for which he was charged. When asked to explain how Michelle's blood could be found on his car and his knife, and how his semen could have been found in her body in the course of the rape examination, Aliff stated that he had no explanation, and insisted that he had gone straight home from his brother-in-law's residence after cleaning the fish they caught. In her closing statement to the jury, Aliff's counsel reminded the jury that "Mr. Aliff told you he is not guilty, that he did not do these crimes with which he is charged. . .. And at this moment he sits over there an innocent man."

¶10 Despite his protestations of innocence, Aliff was found guilty of attempted deliberate homicide and sexual intercourse without consent. He now appeals, requesting remand for a new trial.

## DISCUSSION

¶11 The issue on appeal is whether or not Aliff's trial counsel was ineffective for not offering an alternative jury instruction regarding the offense of aggravated assault, resulting in unfair prejudice.

¶12 This Court reviews claims of ineffective assistance of counsel based on the two-part test set forth in *Strickland v. Washington* (1984), 466 U.S. 668. *State v. Gonzales* (1996), 278 Mont. 525, 532, 926 P.2d 705, 710. A defendant must prove both prongs of this test, and bears a heavy burden when he desires that his conviction be reversed on the grounds of ineffective assistance of counsel. *Gonzales,* 278 Mont. at 532, 926 P.2d at 710. Under the first prong, the defendant must establish that counsel did not act within the range of competence demanded of attorneys in criminal cases. Under the second prong, the defendant must show that the deficient performance was so prejudicial that he did not receive a fair trial.

¶13 Acts of counsel must stem from neglect or ignorance rather than from informed, professional deliberation in order to constitute ineffective assistance to the defendant. *Gonzales,* 278 Mont. at 532, 926 P.2d at 710. In *Gonzalez*, the defendant decided as a matter of trial strategy to not offer a jury instruction regarding a defense that he could have, but chose not to raise at trial.

¶14 That is precisely the circumstance we face here. Aliff contended to the end that he did not perpetrate these crimes, that he was home resting peacefully in his bed with his wife at the time Michelle Hansen was fighting for her life in sub-freezing temperatures, her throat cut from ear to ear with his knife, tire tracks marking her body from his car. Even in the face of a daunting evidentiary record, with Michelle's blood found on his pants, his knife and his car, and his semen found in her body, Aliff did not claim that he only intended to assault Michelle. Rather, he claimed he was innocent because he did not commit the crimes with which he was charged or any other offense in connection with this incident. It is not ineffective assistance of counsel to not offer a jury instruction that is inconsistent with the defense. *Gonzales,* 278 Mont. at 532, 926 P.2d at 710. We conclude the same here.

¶15 Even when given the opportunity in front of the jury, Aliff could not and would not offer an explanation as to how this confluence of events could occur without his participation, or that he did not intend to actually kill his victim. His counsel effectively did everything within her power to suggest to the jury that there might be mitigating circumstances here, even in the face of Aliff's intransigence. A jury instruction on aggravated assault was no more warranted, given Aliff's defense, than was an instruction on a stop sign violation- neither are at issue here. We will not fault defense counsel when Aliff alone controlled his fate and chose a course of action inconsistent with the giving of any lesser included offense instruction. Because the jury instructions actually offered were consistent with Aliff's defense and therefore based on trial strategy, and did not stem from neglect or ignorance, we conclude that Aliff received effective assistance of counsel. Defense counsel's performance was not deficient in any way.

¶16 Because Aliff has failed to meet the first prong of the *Strickland* test, it is not necessary to address the second.

¶17 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER