No. 00-494

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 294

STATE OF MONTANA,

Plaintiff and Respondent.

v.

DOUGLAS F. THEE, JR.,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

Honorable Thomas M. McKittrick, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Douglas F. Thee, Jr., *Pro Se*, Deer Lodge, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General, Helena, Montana

Brant S. Light, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs: February 8, 2001
Decided: December 21, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Douglas F. Thee, Jr., appeals the denial by the Eighth Judicial District Court, Cascade County, of his petition for post-conviction relief. Pursuant to a plea agreement, Thee pleaded guilty to the charge of deliberate homicide under § 45-5-102(1)(b), MCA (1997), for aggravated assault resulting in the death of a 12-month-old child. After the District Court entered judgment and sentence, Thee petitioned *pro se* for post-conviction relief, alleging he would not have pleaded guilty but for ineffective assistance of counsel. The District Court denied the petition. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 Kevin Gefroh died as a result of severe blunt force trauma to the head shortly after admission to a Great Falls emergency room on February 22, 1998. Due to the non-accidental nature of 12-month-old Kevin's injuries, medical personnel alerted the police, who began an immediate investigation. In questioning Kevin's mother, Julie Johnson, and her live-in boyfriend, Douglas Thee, regarding events preceding Kevin's death, the police found inconsistencies in Johnson's and Thee's statements. Detectives asked Thee to submit to further questioning at the police station. Police gave Thee a verbal Miranda warning and read him the waiver, which Thee signed prior to the interview. During questioning, Thee again changed his story about how Kevin was injured. Kevin died during the interview process, and Thee was placed under arrest. On March 4, 1998, Thee was charged with deliberate homicide under the felony murder rule under § 45-5-102(1)(b), MCA (1997). The Information alleged that in the course of committing felony assault upon Kevin, Thee caused the child's death.

¶3 The District Court assigned Eric Olson, lead attorney at the Cascade County Public Defender's office, to represent Thee, with the assistance of co-counsel Carl Jensen, also with the Public Defender's Office. The record shows defense counsel sought and obtained a court-ordered mental evaluation for Thee.

¶4 Thee signed and filed a Plea Agreement and an Acknowledgment of Waiver of Rights by Plea of Guilty on April 16, 1998, almost two months after his arrest. The agreement provided that the State would recommend a 100-year prison sentence in exchange for Thee's plea of guilty to the charge of deliberate homicide under § 45-5-102(1)(b), MCA. At the conclusion of the change of plea hearing, the court accepted Thee's guilty plea and ordered a pre-sentence evaluation. The District Court held a sentencing hearing, after which Thee received the sentence of 100 years at Montana State Prison with no eligibility for parole for 30 years.

¶5 On May 7, 1999, Thee filed the instant *pro se* petition for post-conviction relief, alleging he was denied his right to effective counsel prior to and during his change of plea hearing. For relief, Thee seeks withdrawal of his guilty plea and the opportunity to take his case to trial. To create a record for review, the District Court ordered transcripts of the change of plea and sentencing hearings. Defense counsel Eric Olson prepared a response to Thee's allegations that described, without abridging the attorney-client privilege, Olson's decision-making process during his representation of Thee. Olson recommended new counsel be appointed for Thee, given the fact that Thee would again be exposed to the possibility of the death penalty should his request to withdraw his plea be granted. Cascade County Attorney Brant Light filed a separate response to Thee's post-conviction petition. On May 3, 2000, the District Court issued findings that Thee's change of plea was voluntary and that Thee was afforded competent counsel. The court dismissed Thee's petition as a matter of law for failure to state a claim for relief under § 46-21-201(1)(a), MCA. We affirm.

## STANDARD OF REVIEW

**¶6 We review a district court's denial of a petition for post-conviction relief to determine whether the findings are clearly erroneous and whether the conclusions of law are correct. *Dawson v. State*, 2000 MT 219, ¶ 18, 301 Mont. 135, ¶ 18, 10 P.3d 49, ¶ 18; *Bone v. State* (1997), 284 Mont. 293, 302, 944 P.2d 734, 739-40. When reviewing the district court's findings of fact to determine if they are clearly erroneous, we apply the following criteria:**

(1) the Court will determine whether the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence, the Court will determine if the trial court has misapprehended the evidence; and (3) if the findings are supported by substantial evidence and that evidence has not been misapprehended, this Court may still find a finding is clearly erroneous when, although there is evidence to support it, a review

of the record leaves the court with the definite and firm conviction that a mistake has been committed.

*Dawson,¶ 18.*

¶7 A defendant's right to assistance of counsel is guaranteed by Article II, Section 24, of the Montana Constitution and by the Sixth Amendment to the United States Constitution. We review claims of ineffective assistance of counsel on direct appeal or in post-conviction proceedings using the two-pronged test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *See Dawson*, ¶ 20; *Kills on Top v. State* (1995), 273 Mont. 32, 49, 901 P.2d 1368, 1379. The right to counsel means "the right to effective assistance of counsel." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063, 80 L.Ed.2d at 692 (quoting *McMann v. Richardson* (1970), 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449, n. 14, 25 L.Ed.2d 763, 773, n. 14). *Strickland* provides that a defendant is denied effective assistance of counsel if: (1) counsel made errors so serious that his conduct fell short of the range of competence required of attorneys in criminal cases; and (2) counsel's errors were prejudicial. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L. Ed.2d at 693; *State v. Boyer* (1985), 215 Mont. 143, 147, 695 P.2d 829, 831.

¶8 Judicial scrutiny of counsel's performance must be highly deferential and courts must indulge a strong presumption that counsel's actions regarding defense strategies fall within the wide range of reasonable and sound professional assistance. *Strickland*, 466 U.S. at 688-89, 104 S.Ct. at 2064-65, 80 L.Ed.2d at 693-94. To constitute ineffective assistance, counsel's challenged actions must stem from ignorance or neglect rather than from professional deliberation. *State v. Aliff*, 2001 MT 52, ¶ 13, 304 Mont. 310, ¶ 13, 21 P. 3d 624, ¶ 13 (citing *State v. Gonzales* (1996), 278 Mont. 525, 532, 926 P.2d 705, 710). Moreover, we maintain that counsel's strategic decisions deserve great deference and cannot be the basis upon which to find ineffective assistance of counsel. *Hans v. State* (1997), 283 Mont. 379, 392, 942 P.2d 674, 682 (citations omitted). However, we also noted in *Hans*, that counsel's duty to inform his client as to the nature and elements of the offense and the advisability of a plea are obligatory, not strategic. *Hans*, 283 Mont. at 392, 942 P.2d at 682.

¶9 The second prong of the *Strickland* test requires a defendant to show that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. To show prejudice, the petitioner alleging ineffective assistance of counsel must demonstrate that there is a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart* (1985), 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

## DISCUSSION

¶10 The issue on appeal is whether the District Court erred in denying Douglas Thee's petition for post-conviction relief.

¶11 Thee alleges in his petition that he was denied his right to effective assistance of counsel prior to and during his change of plea hearing. Thee's claim encompasses the following specific allegations:

> a. Defense counsel induced Thee to plead guilty and threatened Thee by telling him he was "going to die" unless he pleaded guilty.

> b. Defense counsel failed to address the alleged violent treatment Thee received from inmates and jail guards during Thee's incarceration in the Cascade County Jail.

> c. Defense counsel failed to seek suppression of statements Thee made during police interrogation, which Thee alleged violated his Miranda rights.

> d. Defense counsel failed to have Thee's mental or emotional stress at the time of the homicide evaluated by a qualified mental health examiner to prove circumstances that could be used to mitigate the deliberate homicide charge.

> e. Defense counsel failed to inform Thee of a possibility of seeking conviction at trial of a lesser included offense.

As a result of the alleged ineffective assistance, Thee claims he did not reach his decision to plead guilty to deliberate homicide voluntarily or intelligently, and he seeks to have his plea vacated. We examine each allegation in turn.

### *a. Threats*

¶12 Thee asserts defense counsel induced Thee to plead guilty by threatening "he was going to die unless he pled guilty." Thee further alleges his counsel told him, "since you

won't sign the plea agreement, you can think about dying because this is where you are headed." Defense counsel Eric Olson, in his written response to Thee's allegations prepared for the District Court, chose not to disclose specific attorney-client communications. Olson noted only that Thee was charged with deliberate homicide and the death penalty remained a viable sentencing option until Thee signed the binding plea agreement.

¶13 Defense counsel has a duty to inform a client of the elements of the offense, the possible punishment, and advisability of a plea agreement. *Hans*, 283 Mont. at 392, 942 P.2d at 682. Montana law provides that "[a] person convicted of the offense of deliberate homicide shall be punished by death . . . , by life imprisonment, or by imprisonment in the state prison for a term of not less than 10 years or more than 100 years." Section 45-5-102 (2), MCA. Discussion of the death penalty between an attorney and client in a capital case may well evoke extreme anxiety but, nevertheless, relate directly, albeit painfully, to the genuine circumstances of a client. Without more, we cannot assume Olson's candid assessment of the State's case and the merits of a plea agreement, as described by the petitioner, violated Olson's duty of loyalty and constituted threats designed to induce Thee to plead guilty. With the deference afforded defense strategies on retrospective review, the reported statements to Thee fall within the wide range of reasonable and sound professional assistance of a competent attorney counseling a client facing the possibility of capital punishment.

### b. Lack of investigation

¶14 Thee claims defense counsel failed to investigate Thee's allegations of physical assault by jail inmates and guards during his pre-judgment incarceration in the county jail. Olson counters that he and co-counsel Carl Jensen communicated with detention center personnel and prepared a report of their findings that Olson shared with Thee and jail administrator, Dan O'Fallon. Neither a copy of defense counsel's report nor any information regarding the nature of the findings and what actions, if any, Cascade County personnel may have taken to address the alleged jailhouse violence against Thee is included in the record on appeal.

¶15 To constitute ineffective assistance, counsel's challenged action must stem from neglect or ignorance rather than from informed professional deliberation. *Aliff, ¶ 13* (citing *Gonzales*, 278 Mont. at 532, 926 P.2d at 710). In this case, defense counsel investigated Thee's allegations of violence, prepared a report of their findings, discussed these findings

with Thee, and brought the matter to the attention of appropriate authorities. With the deference afforded counsel under the *Strickland* test, the concerted actions of Olson and Jensen preclude a finding of deficient counsel performance due to failure to investigate allegations of physical assault.

### c. Failure to seek suppression of evidence

¶16 Thee alleges Olson failed to seek the suppression of certain statements Thee made to police officers prior to the appointment of counsel. Olson claims he reviewed and conferred with Thee about all statements attributed to Thee in police reports and transcripts of interviews. In his response to Thee's petition for post-conviction relief, Olson states he "researched the viability of suppression of the statements and, for various reasons, determined that such a challenge would not be legally viable." Olson also directed forensic psychologist Dr. Duane Green to investigate mental infirmity, mental disease or defect, or suggestibility as grounds for challenging statements made by Thee to the authorities. Dr. Green found no psychological or medical basis for such a challenge.

¶17 Given the deference afforded counsel under the *Strickland* test, strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066, 80 L.Ed.2d at 695. According to Olson's statement, he investigated all statements made by Thee to police investigators, conferred with his client and researched the legal bases for possible suppression of certain statements. The fact that defense counsel reached a legal conclusion on an evidentiary challenge contrary to Thee's hopes provides no ground for finding deficient attorney performance.

### d. Failure to seek mental health evaluation

¶18 Thee claims that defense counsel "failed to have him evaluated by any mental health counselors to determine his competency." The court record shows that defense counsel requested and the court authorized a mental health examination. Although a copy of the report by forensic psychologist Dr. Green is not included in the record on appeal, defense counsel described the results of the evaluation in his response to Thee's petition for post-conviction relief. According to Olson, Dr. Green concluded "beyond a reasonable doubt not only that the defendant was fully competent to understand the charges against him and to assist in his own defense, but that the defendant did not suffer from a mental disease or defect either at the time of the offense or at any other relevant time."

¶19 We indulge a presumption that counsel's actions fall within the wide range of reasonable and sound professional assistance. Contrary to Thee's allegations, defense counsel sought and obtained a court-ordered mental health evaluation of his client. In this case, it appears defense counsel took the unequivocal findings of the mental health evaluation into consideration when advising Thee to accept the plea agreement. We find no deficiency in defense counsel's performance.

### e. Failure to inform defendant of a lesser included offense

¶20 Thee claims his decision to change his plea to guilty to deliberate homicide was neither voluntary nor intelligent because the decision was not based upon a complete understanding of the plea's punitive implications. Thee asserts he would have insisted upon going to trial had Olson informed him of the possibility that a jury could convict him of a lesser included offense, specifically mitigated deliberate homicide under § 45-5-103, MCA.

¶21 At the change of plea hearing on April 17, 1998, the District Court judge probed Thee's understanding of the implications of changing his plea.

THE COURT: Did you read the plea agreement over before signing?

THE DEFENDANT: It was read to me.

THE COURT: Did you enter the plea agreement voluntarily?

THE DEFENDANT: Yes, I was broken up at the time, but yes, I did.

THE COURT: Well, I mean, at the time is one thing. But we're here now. And this is an opportunity to tell the court whether or not you voluntarily are going to go forward with the plea agreement. I don't want you to feel that we're forcing you to enter into this plea agreement. Do you understand that?

THE DEFENDANT: Yes.

¶22 The court proceeded to query Thee in detail regarding his understanding of the punishment outlined in the plea agreement. The court specifically asked Thee whether he understood he waived certain rights by pleading guilty, including the right to trial by jury

or bench trial, the right to assistance of counsel through the trial process, the right to confront and cross-examine witnesses, the right not to be compelled to testify against himself, the right to require his guilt be proven beyond a reasonable doubt, and the right to appeal.

¶23 The colloquy encompassed a discussion of lesser included offenses, as follows:

THE COURT: And you also have the right to submit an instruction to the jury regarding lesser included offenses if they would apply. Do you understand that?

THE DEFENDANT: I don't remember what me and you were talking about.

THE COURT: Do you have a question?

(WHEREUPON, the defendant conferred with Mr. Olson.)

The transcript provides no further reference to lesser included offenses and Thee's grasp of the concept remains ambiguous in the court record.

¶24 Failure of an attorney to inform a client of the relevant law constitutes deficient performance under the first prong of the *Strickland* test. *Hill*, 474 U.S. at 62, 106 S.Ct. at 372, 88 L.Ed.2d at 212. However, included offenses are not relevant to Thee's situation. Neither

mitigated deliberate homicide nor negligent homicide are included offenses of deliberate homicide as defined in § 45-5-102(1)(b), MCA. Sections 45-5-103(3) and 45-5-104(2), MCA (1997). Because Thee was charged with deliberate homicide under the "felony murder" rule of § 45-5-102(1)(b), MCA, neither mitigated deliberate homicide nor negligent homicide was considered a lesser included offense. Consequently, Thee did not waive a right to a jury instruction on a lesser included offense when he waived his right to a trial. Olson had no duty to inform Thee about the possibility of conviction at trial of a lesser included offense when such a possibility did not legally exist. Thee's claim that he pleaded guilty involuntarily because his attorney did not inform him of the possibility of a lesser included offense carries no legal weight. We find no error in the District Court's finding that Thee voluntarily changed his plea to guilty.

## CONCLUSION

¶25 The record provides substantial evidence to support the District Court's findings that Douglas Thee changed his plea intelligently and voluntarily and that Thee was afforded effective assistance of counsel. We hold none of the challenged actions of defense counsel fall outside the "wide range of reasonable and sound professional assistance" set forth by the first prong of the *Strickland* test. Because we find no deficiency in defense counsel performance, prejudice has no pertinence. We affirm.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ PATRICIA COTTER

/S/ JIM REGNIER