No.  96-232

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

THE STATE OF MONTANA,

Plaintiff and Respondent,

v.

DENNIS FINNEY,

Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted O. Lympus, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Jeffrey T. Renz, Montana Defender Project,
Missoula, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General;
Patricia Jordan, Assistant Attorney General,
Helena, Montana

Ed Corrigan, Deputy County Attorney, Kalispell,
Montana

Submitted on Briefs: December 5, 1996

Decided: January 9, 1997
Filed:


_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Dennis Finney pled guilty before the Eleventh Judicial District Court, Flathead County, to three counts of burglary and one count of felony theft.  Here, he appeals from the dismissal of his second amended petition for post-conviction relief.  We affirm.

The following issues are raised on appeal:

1.  Were Finneyþs First Amendment rights violated and does plain error exist as a result of reference at the sentencing hearing to his affiliation with the Aryan Nations and "White Power?"

2.  Was Finneyþs Sixth Amendment right to effective assistance of counsel violated when counsel failed to inform him about his right to appeal and failed to perfect the right by filing a notice of appeal?

In February 1993, Dennis Finney pled guilty to four crimes committed in November 1992 in Kalispell, Montana:  theft of locksmith and keymaking equipment from his neighbor; and burglaries at the Mennonite Church, the Sugar n' Spice Day Care in the Christian Center Church, and an elementary and junior high school.

At the sentencing hearing, the court heard evidence that Finney, at age twenty-six, had accumulated a significant criminal history, including possession of stolen property, multiple thefts, probation violations, and arson of an apartment building.  Finney's previous efforts at probation and parole had been unsuccessful.  He had fled from supervision, used drugs, and committed crimes while on probation for previous offenses.  When he committed the first of the instant burglaries, Finney had been paroled from Montana State Prison for only a few weeks.

Finney testified at length at his sentencing hearing.  He stated that he had never been employed and that crime was his way of making a living.  He said it did not really matter to him whether he was in prison or on the streets, and that he was more used to prison life than to street life.

Finney testified that the November 1992 crimes were his idea, not that of his codefendants.  He also admitted to being a chronic

user of illegal drugs but denied that this was a problem for him. He had previously refused to enter treatment for drug addiction.

In a written statement prepared for the presentence investigation, Finney wrote:

> I was arrested for 3 Burglarys and one Felony Theft. I realy dont got anythink to say about these crimes. I know Ill be going back to prison and I know Ill go back agian after I get out from this ordeal--prison dosent bother me and its all I know my people are in prison "Aryan Nations" so like I said prison dosent bother me. I do feel bad about one thing and that is messing with the Sugar-n-Spice day care I had no Idea it was a day care--thats about it.

The words "White Power" are tattooed on Finneyþs forehead. During cross-examination on his written statement at sentencing, he acknowledged that his ties to "White Power" are "pretty strong."

The court imposed the maximum sentence of twenty years for each of the three burglaries, ordering that two of those sentences be served concurrently. It imposed a sentence of ten years for the theft, resulting in a total sentence of fifty years. The court found that Finney presented a danger to society and designated him a dangerous offender. Although it noted that his record would allow a designation as a persistent felony offender, the State did not seek such a designation and the court did not impose it.

The court imposed upon Finney responsibility for restitution of approximately thirty-four thousand dollars, the exact sum to be determined by Finney's parole and probation officer. The court further recommended that, at the prison, Finney receive counseling and treatment for drug addiction.

Finney petitioned for sentence review, which action was stayed pending disposition of his pro se petition for post-conviction relief. Counsel on this appeal later assisted him in filing a second amended petition for post-conviction relief, in which he argued that he had received a longer sentence than his codefendants because the court improperly considered his membership in the Aryan Nations Church. The second amended petition also asserted that Finney's counsel rendered ineffective assistance by failing to request a psychiatric examination and failing to advise Finney of his right to appeal. Finney later withdrew his allegation of ineffective assistance for failure to obtain a psychiatric examination.

The District Court denied Finney's second amended petition for post-conviction relief, stating in part that his sentence was based on his "own life history and unwillingness to even attempt rehabilitation."

## ISSUE I

Were Finney's First Amendment rights violated and does plain

error exist as a result of reference at the sentencing hearing to his affiliation with the Aryan Nations and "White Power?"

In imposing sentence, the District Court orally discussed at length the lack of mitigating circumstances and the aggravating circumstances in this case. As to the State's recommendation of a substantial term of incarceration, the court stated:

> Although I donþt want to impose the kind of a sentence or fashion the kind of a sentence that totally slams the door upon any possibility of rehabilitation, in the event that you some day decide that maybe that is a goal you want to direct your energies toward, I am concerned with your inclination at this time at least to direct your energies toward the cause of such organizations as the Aryan Nations. I think youþll find that that is not something that youþll find a great deal of receptance [sic] to at the Montana State Prison. You may have had that experience elsewhere. It may not play well at Deer Lodge, Montana. But that is an experience that you may have to learn for yourself.

At the end of the hearing, after imposing sentence, the court stated:

> I am not aware of any authority that I have to impose upon you any restrictions concerning your desire to become involved with the Aryan Nations, so I wonþt attempt to do so; other than to advise you that such behavior will not play well in any attempt you ever make toward probation or parole.
>
> That is merely offered as advice. It is up to you whether you take it or not[.]

Finney argues that the court's references violated his First Amendment rights to free speech and freedom of religion. He cites as authority Dawson v. Delaware (1992), 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309.

In Dawson, the prosecution introduced evidence to a capital sentencing jury that the defendant had the words "Aryan Brotherhood" tattooed on his hand. The prosecution also introduced into evidence a stipulated statement that:

> The Aryan Brotherhood refers to a white racist prison gang that began in the 1960þs in California in response to other gangs of racial minorities. Separate gangs calling themselves the Aryan Brotherhood now exist in many state prisons including Delaware.

Dawson, 503 U.S. at 162. The United States Supreme Court considered but rejected Dawsonþs argument that because his association

with the Aryan Brotherhood was constitutionally protected, the admission into evidence of information about that association constituted violation of his constitutional rights.  The Court held, however, that the admission into evidence of the statement regarding Dawsonþs membership in the Aryan Brotherhood was constitutional error because "the narrowness of the stipulation left the Aryan Brotherhood evidence totally without relevance to Dawsonþs sentencing proceeding."  Dawson, 503 U.S. at 165.  The Court stated it had not been shown that the Aryan Brotherhood was tied in any way to Dawsonþs crime, the prosecution did not prove that the Aryan Brotherhood had committed any unlawful or violent acts to indicate that Dawson posed a future danger to society, and the evidence was not relevant to rebut any mitigating evidence.  Dawson, 503 U.S. at 166-67.

In another case cited by Finney, the defendant was convicted of conspiracy to build a pipe bomb and other crimes in connection with travel from Hayden Lake, Idaho, to Seattle, Washington, for the purpose of exploding a bomb in a gay bar.  United States v. Winslow (9th Cir. 1992), 962 F.2d 845.  In contrast to the holding under the facts of Dawson, the Ninth Circuit Court of Appeals held:

> Because the term "Aryan Warrior" was relevant to back-
> ground material, and referred to in testimony and other
> evidence presented to the jury, it was not improper for
> the prosecutor to mention it when questioning [a co-
> defendant].

Winslow, 962 F.2d at 850.

In this case, during one of the burglaries, Finney and his codefendants wrote "White Power" and drew two lightning bolts on a school wall with magic markers.  Finney also brought up the subject of Aryan Nations in his own written statement for the presentence investigation.

The discussion of Aryan Nations and "White Power" at sentencing was limited.  The prosecuting attorney asked Finney to clarify that he had violated probation and gone to northern Idaho because of the Aryan Nations presence there.  The other references were the court's advice to Finney that association with the Aryan Nations might not be helpful to him within the Montana State Prison or in seeking parole.

Moreover, in this case, Finney's sentence was imposed by the court, rather than by a jury, before which possible inflammatory information must be more carefully screened.  See State v. Keith (1988), 231 Mont. 214, 237, 754 P.2d 474, 488.

Finally, an abundance of other evidence in the record supports the sentence imposed, which is within the range allowed for the crimes of which Finney was convicted.  The record does not support a conclusion that the court relied upon Finneyþs support of Aryan Nations or "White Power" in determining his sentence and in giving

its reasons therefor pursuant to 46-18-102(3), MCA. We hold that Finney has established neither violation of his First Amendment rights nor plain error as a result of reference at the sentencing hearing to his affiliation with the Aryan Nations.

ISSUE 2

Was Finneyþs Sixth Amendment right to effective assistance of counsel violated when counsel failed to inform him about his right to appeal and failed to perfect the right by filing a notice of appeal?

A claim of ineffective assistance of counsel requires a showing that counselþs performance was deficient and that the deficient performance prejudiced the defense so as to deny the defendant a fair trial. Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, adopted by this Court in State v. Boyer (1985), 215 Mont. 143, 147, 695 P.2d 829, 831.

Issues which may be raised on appeal after a criminal defendant enters a plea of guilty are limited. United States v. Broce (1989), 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927, 935. Further, no violation of a defendantþs due process rights occurs if the defendant is denied an appeal but is afforded a remedy in post-conviction proceedings. Evitts v. Lucey (1985), 469 U.S. 387, 399, 105 S.Ct. 830, 838, 83 L.Ed.2d 821, 832.

The issue which Finney claims he would have argued on appeal has been considered on its merits by the District Court and under Issue 1 above. We conclude, therefore, that the remedy for any ineffective assistance of counsel has been granted and that Finney's argument under Issue 2 has become moot.

We affirm the decision of the District Court.

/S/ J. A. TURNAGE

We concur:

/S/ JAMES C. NELSON
/S/ WILLIAM E. HUNT, SR.
/S/ TERRY N. TRIEWEILER
/S/ KARLA M. GRAY