No. 93-176

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

KRISTOFOR HANS.

       Petitioner,

  v.

STATE OF MONTANA,

       Respondent.

ORIGINAL PROCEEDING

COUNSEL OF RECORD:

    For Petitioner:

       William Hooks, Appellate Defender, Helena, Montana

    For Respondent:

       Hon. Joseph P. Mazurek, Attorney General; Patricia Jordan, Assistant Attorney General, Helena, Montana

       Thomas P. Meissner, Fergus County Attorney, Lewistown, Montana

**FILED**

JUL 0 2 1997

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: March 13. 1997

Decided: July 2, 1997

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Petitioner, Kristofor Hans, filed with this Court, on November 17, 1993, an amended petition for post-conviction relief from his conviction in the Tenth Judicial District Court, Fergus County. In an August 25, 1994 Order we denied two of Hans' claims and reserved decision on the remaining three claims pending an evidentiary hearing and findings of fact and conclusions of law in the District Court. Following the District Court's findings of fact and conclusions of law tiled on November 21, 1996, we ordered supplemental briefing by the parties to assist this Court in ruling on Hans' remaining post-conviction relief claims. After reviewing the District Court's findings of fact and conclusions of law and the parties' briefs, we deny Hans' remaining claims for post-conviction relief, except to the extent that we allow Hans to further amend his petition to address appealable sentencing issues.

We review the following claims in Hans' amended petition for post-conviction relief:

1) whether Hans' counsel rendered ineffective assistance in violation of Hans' rights as guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution;

2) whether Hans' guilty plea was entered knowingly, voluntarily, and intelligently;

3) whether the mental health evaluators' failure to advise Hans of his right to the presence of counsel, his right not to submit to the evaluation, and that any statements could be used against him violated Hans' rights to due process and assistance of counsel, and his privilege against self-incrimination.

Factual and Procedural History

On December 4, 1986 Hans, then aged 14, was taken into custody following a shooting incident at Fergus County High School in which a substitute teacher was shot and killed, the vice-principal was shot and wounded, and two students were wounded by bullet fragments. The State of Montana (State) tiled a petition in Youth Court alleging the offenses of deliberate homicide and attempted deliberate homicide. Counsel was appointed to act as *guardian ad litem* for Hans. The court ordered that Hans be committed to the State Department of Institutions and that a mental evaluation be prepared. Subsequently, the State tiled a motion to transfer the case from Youth Court to District Court.

Pursuant to a motion by the prosecutor and stipulation by defense counsel, mental health evaluations prepared at the Montana Youth Treatment Center were submitted to the Youth Court, with copies to the county attorney and to defense counsel. The Youth Court ordered that Hans be transferred from the Montana Youth Treatment Center to the Pine Hills Institution in Miles City in order that he be evaluated by the Department of Institutions, and that copies of all reports be sent to Youth Court and counsel for each party, pursuant to stipulation of counsel.

A hearing was held in Youth Court on the State's motion to transfer the cause to the District Court. The State called numerous witnesses to testify, including Hans' friend S.F., who testified to Hans' preparation and planning of the crimes for several days prior to the offenses. The Youth Court ordered that the cause be transferred to District Court.

An Information was filed in the Tenth Judicial District Court, Fergus County, on May 28, 1987, charging Hans with four offenses: deliberate homicide; attempted deliberate homicide; and two counts of felony assault. Counsel was appointed and Hans entered pleas of not guilty to all charges.

Counsel for Hans gave written notice, pursuant to § 46-14-201, MCA (1985), of his intent to rely on mental disease or defect to prove lack of the requisite state of mind of the offenses. The notice specifically requested a mental health evaluation at the Montana State Hospital (MSH) and that the Montana Youth Treatment reports be submitted to MSH to assist in the evaluation.

The court entered an order for an evaluation at MSH to determine Hans' fitness to proceed as well as state of mind at the time of the offenses. Hans filed a notice of appeal from the Youth Court decision and proceedings in the District Court were then stayed pending the appeal of the transfer order.

Personnel at MSH submitted an evaluation report pursuant to the District Court order; both counsel received copies. The report contained Hans' statements and narratives regarding the incident in question. Hans had been evaluated at MSH over a two-month period. Upon his admission to MSH, he was presented with a form entitled "Evaluation Information." This form advised him that he had been court ordered to obtain an evaluation, that he was expected to cooperate, and that the results of the evaluation may be reported to the court. Hans signed this form and an evaluator at MSH later reviewed the form with Hans. Hans' counsel was not present during any of the testing or evaluation sessions at MSH.

4

The report concluded that Hans was competent to stand trial. However, the report also found that Hans was suffering from a mental disease or defect. Hans was diagnosed with severe conduct disorder and schizotypal personality disorder. Because of "the severity of the symptomatology associated with [this] diagnosis," the hospital staff found "that Mr. Hans does suffer from a mental disease, disorder, or defect within the definition of the State of Montana Statutes." Despite this finding, the MSH evaluators found that Hans "did not show loss of cognitive or behavioral control as the result of a mental disorder" and, "retained the ability to act with knowledge and purpose" at the time of the crimes.

By order March 18, 1988, the Montana Supreme Court affirmed the Youth Court transfer to District Court. Three days later, counsel for Hans filed a motion for appointment of a psychiatrist or licensed clinical psychologist as a defense expert. The following week counsel filed a supplemental motion in which he alleged that it was essential that a clinical psychologist be appointed to assist the defense in trial preparation. The District Court denied the initial motion for appointment of a psychiatrist or clinical psychologist, but granted the supplemental motion which granted Hans the "right to retain a psychiatrist or clinical psychologist to assist with trial preparation and with trial."

Upon motion by the State and without objection from defense counsel, the court found Hans competent to stand trial at an April 21, 1988 hearing. At the hearing, in response to questioning by the court, Hans' counsel stated "that Kris basically has never told me anything and has refused to talk to me. . . ." The statement prompted the State to move the court for an order directing that Hans appear in court to respond to inquiries about his counsel's trial

5

preparation and the attorney-client relationship. The court held a hearing in which Hans expressed his satisfaction with counsel. Defense counsel stated that due to the nature of the defense, he did not need to further consult with Hans and that Hans need not be brought to the county jail from Pine Hills for consultation purposes.

In response to an earlier court order to name all the defense witnesses, defense counsel filed a "Notice" in which he recounted prior efforts to have the court appoint a psychiatrist or licensed clinical psychologist to testify at trial. He also named Hans' mother and father as witnesses and a clinical psychologist to be called if, upon request for reconsideration, the court were to grant his prior motion.

On May 4, 1988 the State deposed Dr. Ned Tranel, the psychologist named as assisting the defense for trial preparation. The county attorney stated as a preliminary matter that "since Dr. Tranel will be testifying at the trial," objections would be reserved. In his deposition, Dr. Tranel diagnosed Hans as having a schizotypal personality disorder, and explained that this disorder includes a set of personality traits that are maladaptive, along with possible hallucinations and breaks with reality. However, Dr. Tranel stated that Hans was not hallucinatory at the time of the shooting incident. Although, in terms of psychology, Dr. Tranel disagreed with the Montana statutory definitions of "knowingly" and "purposely" in that they presented an "all or nothing legal question," he ultimately agreed with the conclusion of the MSH report that Hans acted within the statutory definitions of "knowingly" and "purposely."

On May 9, 1988, an initial change of plea hearing was held. The Judge engaged Hans in a lengthy colloquy regarding the nature of the offenses charged, the possible punishment, and the rights that Hans would be relinquishing if he were to plead guilty. Hans indicated that he was unsure of whether he wanted to enter guilty pleas because his parents had recently discussed seeking an opinion from another lawyer. The court continued the matter until the next day, at which time the warnings given to Hans the previous day regarding the consequences of a guilty plea were reiterated. Hans indicated that he had received a second opinion from an unnamed lawyer who concurred with defense counsel's advice. Hans changed his pleas to guilty on each of the four charges and the court accepted the pleas.

A sentencing hearing was conducted in June during which the State called a number of witnesses, including a psychiatrist and a psychologist from MSH. The defense called Hans' mother and Dr. Tranel as witnesses. Defense counsel argued that Hans should be sentenced as a mentally ill person under §§ 46-14-3 11 and 46-14-3 12, MCA, and that the mandatory minimums should not be considered pursuant to § 46-18-223, MCA.

The District Court found that the provisions of § 46-14-311, MCA, were not met in that Hans was not suffering from a mental disease or defect which rendered him unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. The District Court perceived no mitigating factors other than Hans' age.

Hans was sentenced to the Montana Department of Institutions for a term of 100 years, with an additional three years for the use of the weapon, on Count I; and to the same term on Count II, to be served consecutively. The sentences for Counts III and IV were ten

years each plus two years for the use of a weapon, to be served concurrently with the terms imposed in Count I.  Hans was designated a dangerous offender for the purpose of parole eligibility.

After sentencing, Hans wrote a letter to the presiding District Court Judge, informing him of his intention to change attorneys. Hans stated in the letter that his father would be paying for the lawyer's fees. The lawyer was not identified in the letter.

Defense counsel filed a notice of appeal from the Sentencing Order on July 29, 1988. On September 8, 1988 defense counsel filed a "Notice of Withdrawal of Notice of Appeal" advising the court that he had advised Hans that there were no grounds for appeal, that Hans' father intended to retain another attorney for appeal, but that counsel had neither heard from another attorney nor from Hans' father.

Hans petitioned for review of his sentence with the Sentence Review Division which affirmed his sentence. Thereafter, Hans tiled a pro se petition for post-conviction relief with this Court on April 12, 1993. The State Appellate Defender was ultimately appointed to represent Hans and an amended petition for post-conviction relief was tiled.

Hans asserted five claims in his amended petition: (1) that his guilty pleas were not voluntarily or knowingly entered; (2) that he received ineffective assistance of counsel in that his counsel failed to investigate and prepare for trial, failed to adequately discuss the case and any plea negotiations with his client, failed to adequately discuss and inform his client of the elements of the crimes charged and the consequences of a plea, failed to object to the procedure by which mental health evaluations were provided to the court and the county

attorney, failed to adequately inform his client of his constitutional rights with respect to the evaluations and failed to protect those rights, failed to object to the placing of his client under oath to give testimony concerning the effective assistance of counsel, and failed to protect his client's right to appeal; (3) that the trial court failed to appoint a mental health expert to assist the defense; (4) that the trial court erred in ordering the mental health experts to report to the court and both counsel; and (5) that Hans was denied his right to counsel and his privilege against self-incrimination by the failure of the mental health professionals to advise him of these rights.

We denied claims 3 and 4, reserved ruling on claims 1 and 5, and remanded to the District Court for an evidentiary hearing and for entry of findings of fact and conclusions of law on claim 2.

The District Court held a hearing on November 30, 1994, and received evidence relevant to claim 2, as well as to claim 5. In its findings and conclusions issued on November 21, 1996, the court found that Hans' counsel had been effective in all aspects of, his representation but for his failure to follow the Anders v. California (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, procedure in withdrawing the notice of appeal. The District Court found no prejudice resulting from this deficiency.

Standard of Review

Hans claims that this Court should conduct a *de novo* review of his claims of ineffective assistance of counsel. He cites to several United States Supreme Court and federal circuit court decisions for the proposition that a claim of ineffective assistance of

9

counsel is a mixed question of law and fact and as such must be reviewed *de novo*. The State contends that the proper standard for review of a district court's denial of post-conviction. relief is whether substantial evidence supports the findings and conclusions of the district court. Although the District Court purported to deny "the petition for post-conviction relief" in its findings and conclusions, Hans did not originally file a petition with the District Court for post-conviction relief but filed his petition with this Court. Our August 25, 1994 Order directed the District Court to conduct an evidentiary hearing and issue findings of fact and conclusions of law in regard to Hans' post-conviction petition to this Court. Therefore, notwithstanding the District Court's characterization, we are not reviewing a district court's denial of a petition for post-conviction relief; instead we review the District Court's findings and conclusions regarding the claim of ineffective assistance of counsel. Our review of a district court's findings of fact is whether they are clearly erroneous. Daines v. Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906, and our review of a district court's conclusions of law is whether the court's interpretation of the law is correct. State v. Baker (1995), 272 Mont. 273, 280, 901 P.2d 54, 58.

The general standards for the establishment of a claim of ineffective assistance of counsel were established in the United States Supreme Court case of Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, which set forth a two-pronged test for determining whether effective assistance of counsel was denied. This test was adopted by this Court in State v. Boyer (1985), 215 Mont. 143, 695 P.2d 829. First, a defendant must show that counsel's performance was deficient, i.e., "that counsel made errors

so serious that counsel was not ftmctioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. In determining whether counsel rendered deficient performance, counsel's conduct is presumed to be "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Strickland, 466 U.S. at 689. Hans argues that this presumption applies only to counsel's tactical or strategic decisions and cites several circuit court decisions interpreting the presumption in the same manner. Boria v. Keane (2nd Cir. 1996), 99 F.3d 492,498 (holding that whether to give advice to a client relative to a plea bargain is not a strategic decision deserving of deference); Foster v. Lockhart (8th Cir. 1993), 9 F.3d 722,726; United States v. Palomba (9th Cir. 1994), 31 F.3d 1456, 1466. This Court has held that counsel's trial tactics and strategic decisions not only deserve great deference when reviewed on an ineffective assistance claim but cannot be the basis upon which to find ineffective assistance of counsel. State v. Gonzales (1996), 278 Mont. 525, 532, 926 P.2d 705, 710; State v. Sheppard (1995), 270 Mont. 122, 128,890 P.2d 754,757; State v. Coates (1990), 241 Mont. 33 1, 337, 786 P.2d 1182, 1185. Instead, in order to constitute ineffective assistance, acts of counsel must stem from neglect or ignorance rather than from informed, professional deliberation. Gonzales, 926 P.2d at 710. This Court has recognized that the degree of deference given to counsel's conduct which cannot be considered "trial strategy" depends upon the circumstances of the alleged act or omission by counsel. In State v. Denny (1993), 262 Mont. 248, 252-53, 865 P.2d 226, 228-29, we held that the decision to interview

potential witnesses was not a strategic decision but a specific obligation inherent in counsel's duty to investigate the case. In evaluating counsel's performance we held that the specific obligation to interview witnesses must temper the amount of deference given to counsel's conduct. Denny, 865 P.2d at 229. In other words, non-strategic decisions are not accorded "great deference." Rather, they are accorded slight deference if based on professional deliberation. Non-strategic decisions not based on professional deliberation, or those that stem from neglect or ignorance, are accorded no deference.

In the instant case, counsel's decisions as to whether and what to advise Hans as to the nature and elements of the offense and the advisability of a plea are obligatory, not strategic decisions and, thus, the deference given to these decisions, as with the decision to investigate, must be tempered by counsel's duty to adequately inform his client. Accordingly, when we review counsel's performance in trial preparation and advice as to whether to plead we will indulge only a slight presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

The second prong of the Strickland test requires a defendant to show that counsel's deficient performance prejudiced the defense so as to deny the defendant a fair trial. Strickland, 466 U.S. at 687. In assessing challenges to guilty pleas based on ineffective assistance of counsel a defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart (1985), 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210.

12

This Court has held that the Strickland standard applies to petitions for post-conviction relief. Lester Kills On Top v. State (1995), 273 Mont. 32, 49, 901 P.2d 1368, 1379.

Issue One

> Whether Hans' counsel rendered ineffective assistance in violation of Hans' rights as guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution?

Hans alleged that his counsel failed to provide effective assistance of counsel in several areas including the following:

(a) communication with him about the status of the case and the "defense" of mental disease or defect and the lesser offense of mitigated deliberate homicide; (b) requesting and agreeing to the dissemination of mental health evaluations; (c) investigation and preparation for trial; and (d) the appeal. We will discuss these allegations separately.

Hans alleges that the District Court "abdicated its responsibility to undertake a searching review of the facts" by adopting verbatim the State's proposed findings of fact and conclusions of law. We have held that a district court does not commit error when it adopts a party's proposed findings and conclusions where the adopted findings and conclusions are "sufficiently comprehensive and pertinent to the issues to provide a basis for the decision and are supported by the evidence." In re Marriage of Stufft (1996), 276 Mont. 454, 457, 916 P.2d 767, 769 (citing In re Marriage of Purdy (1988), 234 Mont. 502, 504, 764 P.2d 857, 858). Hans further alleges that certain of the court's findings are not supported by the evidence. While we decline to rule that the court committed reversible error by its adoption

**13**

of the State's findings and conclusions, we are mindful of the court's verbatim adoption in our analysis of whether the court's findings and conclusions are clearly erroneous.

(a) Lack of Communication

Hans contends that a lack of communication between Hans and his counsel permeated the case and that, given Hans' age and mental status, his counsel had even greater responsibility in ascertaining whether Hans understood the proceedings. Hans relies on a journal article on legal ethics in support of this additional affirmative duty. We note that while Strickland condones the use of professional standards for guides in determining reasonable professional standards upon which to judge whether ineffective assistance was rendered, an article in a legal journal does not create a hard and fast rule to which attorneys must conform their behavior.

Hans claims that his counsel's contact with him during the proceedings was inadequate. The District Court found that counsel's time records show "numerous contacts and consultations between [counsel] and the Petitioner" and that counsel was "in regular, contact" with Hans. Hans claims that this finding is not supported by the record. He points to counsel's time records which reveal a period of four and one-half months between the receipt of the MSH report to the date this Court affirmed the transfer to District Court in which there was no contact between defense counsel and Hans. Shortly after this time frame, during the hearing on Hans' competency to stand trial, Hans' counsel made the comments that Hans would not talk to him regarding the crime and that he did not need to talk to his client. Following the prosecutor's suggestion that a hearing be held on the attorney-client

**14**

relationship between Hans and his counsel, a hearing was held in which Hans testified that he believed counsel was doing a good job and that they had gotten "everything sorted out."

Hans claims that defense counsel erred in failing to object to Hans being placed under oath for this purpose. The District Court found that questioning by the county attorney did not relate to any confidential attorney-client communications nor to any trial strategies or defenses. We agree and find no error.

The State argues that during the four and one-half month period, counsel was in contact with Hans' parents and was working on the case and that since the only defense was Hans' mental state and as facts of the case were well known, the fact that Hans would not discuss the facts of the crime with his attorney did not hinder defense counsel's preparation of a defense. Additionally, Hans' counsel believed it was more appropriate for Hans to stay at Pine Hills juvenile detention center rather than be housed in the Fergus County jail during the pretrial proceedings. Although communication between counsel and client was minimal we find that it was not deficient and that the District Court's findings regarding inadequate communication are not clearly erroneous,

Adequacy of Advice Regarding Mitigated Deliberate Homicide

Hans alleges that his counsel failed to adequately inform him and, in fact, misinformed him, regarding the lesser offense of mitigated deliberate homicide, and the "defense" of mental disease or defect. Hans alleges that his counsel advised him according to an outdated and incorrect theory regarding the availability of the lesser offense of mitigated deliberate homicide. Section 45-5-103, MCA, defines mitigated deliberate

**15**

homicide as a homicide committed "under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse." The record indicates that defense counsel used the term "heat of passion" to describe "mitigated deliberate homicide" both to Hans and to the defense expert. Counsel described the lesser offense at the May 10th change of plea hearing as follows:

> [DEFENSE COUNSEL]:   Kris, we went over extensively, on at least five occasions, the charge of mitigated deliberate homicide, did we not?
>
> [HANS]:       Yes, we did.
>
> [DEFENSE COUNSEL]:   You understand that mitigated deliberate homicide is deliberate homicide that was committed while you were under extreme mental or emotional stress, correct?
>
> [HANS]:       Correct.
>
> [DEFENSE COUNSEL]:   I explained in Montana that that, in effect, means in the heat of passion or upon sudden argument, right?
>
> [HANS]:       Right.
>
> [DEFENSE COUNSEL]:   The doctors at Warm Springs ruled that out, they said you were not under that kind of stress, correct?
>
> [HANS]:       Correct.
>
> [DEFENSE COUNSEL]:   Dr. Tranel also said that you were not under that kind of stress? He agreed with the doctors at Warm Springs, right?
>
> [HANS]:       Right.
>
> [DEFENSE COUNSEL]:   You're satisfied that that would not be available to you, at least as an instruction to the jury, because we have not come up with anyone who would testify that that might be an issue as far as mitigation goes, is that correct?

16

[HANS]:      That's correct.

[DEFENSE COUNSEL]:   You're satisfied with my advice to you on that and also with the second opinion, correct?

[HANS]:      Yes.

[THE COURT]:      As I understand this, Kris, from reading your recitation of the facts, and the psychologists' statements, you didn't have an argument or a fight with anybody just before this, or anything like that, did you?

[HANS]:  No.

Hans claims that although the lesser offense was discussed on several occasions, the information given Hans by counsel was incorrect and he was, therefore, inadequately informed. Hans cites State v. Azure (1977), 175 Mont. 189, 196, 573 P.2d 179, 183, for the proposition that unless a defendant has a "full understanding of the precise kind of homicide to which he pled. . [t]his Court will not assume the plea was made 'with an understanding of the charge.' "

In support of his contention that "heat of passion" was a misleading manner by which to describe mitigated deliberate homicide, Hans points out that the annotations to § 45-5-103, MCA, indicate that the defense is no longer limited to the "heat of passion" situation.   The notes indicate that the revised definition seeks to "avoid many of the definitional problems which pervaded the traditional approach to manslaughter by eliminating the terms 'malice,' 'heat of passion,' [and] 'sudden provocation' ." Hans also cites to the comments to the Model Penal Code § 210.3 upon which § 45-5-103, MCA, was based. The comments indicate that the new definition is not as limited as the traditional rule of provocation. Hans

17

further cites a New York state case for the proposition that the Model Penal Code expanded the definition of traditional manslaughter. People v. Casassa (N.Y. 1980), 404 N.E.2d 1310. The defendant in Casassa was found not to have acted under "extreme emotional disturbance" when he murdered his ex-girlfriend three months after she ended the relationship. At trial, one psychiatrist testified that the defendant was obsessed with the victim and was acting "under extreme emotional disturbance" at the time of the killing but another psychiatrist testified that he was not. Casassa, 404 N.E.2d at 13 13. The statute, analyzed in Casassa is based on § 210.3 of the Model Penal Code and provides for an affirmative defense to murder in the second degree (reducing the charge to manslaughter) where "the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." The offense of mitigated deliberate homicide is similarly defined in the Montana Code as an offense where the defendant acted "under the influence of extreme mental or emotional stress for which there is a reasonable explanation or excuse." Section 45-5-103, MCA. In interpreting its affirmative defense to murder in the second degree, the New York Court of Appeals stated that, rather than being limited to the "heat of passion" doctrine which requires an act taken as a response to provocation without cooling off, " 'an action influenced by an extreme emotional disturbance is not one that is necessarily so spontaneously undertaken.' " Casassa, 404 N.E.2d at 1314 (citation omitted).

While Casassa confirms that the revised Model Penal Code no longer requires an immediate reaction to some provocation, it reveals that "provocation" is still an integral component of "manslaughter" or "mitigated deliberate homicide." The provocation element

18

comes into play under the second part of the definition in that there must be a "reasonable explanation or excuse" for the defendant's extreme emotional disturbance. According to the New York Court of Appeals, this second component was "designed to sweep away 'the rigid rules that have developed with respect to the sufficiency of particular types of provocation.'" Casassa, 404 N.E.2d at 1316 (emphasis added).

Defense counsel testified at the evidentiary hearing that he used the phrase "heat of passion" as a "descriptive phrase" for explaining mitigated deliberate homicide to "laymen." We recognize that defense counsel's explanation of mitigated deliberate homicide to Hans did not encompass all the nuances contemplated by the Model Penal Code and other states' interpretations of the Model Penal Code. Nonetheless, counsel's use of "heat of passion" to describe mitigated deliberate homicide conveyed the substance of the offense. Counsel's example properly demonstrated that provocation remains the pivotal requirement of the lesser offense under the Model Penal Code and, more importantly, under then available Montana case law.

The State argues that most of the Montana cases on mitigated deliberate homicide at the time of Hans' tial preparation show that a charge or conviction of mitigated deliberate homicide was appropriate when the defendant was acting in the "heat of passion" or during an argument or upon provocation. The State cites State v. Buckley (1976), 171 Mont. 238, 557 P.2d 283, as an example of this Court rejecting the lesser offense where the defendant's actions were those of "a slow deliberate, calm, and cool killer." In Buckley, the defendant was first shot at by the victim. The defendant tired back, wounding the victim, and then.

19

continued to walk toward the victim, shooting, and finally kneeled down and delivered the fatal shot to the victim's head from less than a foot away. Buckley, 557 P.2d at 284. Even though the victim tired the first shot, the provocation was not, under the circumstances, a reasonable excuse for the defendant's subsequent conduct.

Hans cites State v. Gratzer (1984), 209 Mont. 308, 682 P.2d 141, as evidence that Montana law did not limit mitigated deliberate homicide to heat of passion circumstances. In Gratzer, this Court ruled that the defendant was entitled to a jury instruction on mitigated deliberate homicide. The defendant let the air out of his girlfriend's car tires in an attempt to discover the identity of a man the defendant believed she had been dating. After he was chased away from the car, he later returned with a gun. He found a vantage point, waited and observed his girlfriend, later moved closer and, after hiding for a period of time, confronted his girlfriend and the other man. After a struggle, Gratzer shot the man in the back and then fired two fatal point-blank shots. Gratzer, 682 P.2d at 143.

Hans argues that Gratzer did not act in the "heat of passion" when he killed his victim and yet was entitled to a jury instruction on mitigated deliberate homicide. Whether or not the facts in Gratzer amounted to a "heat of passion" killing, Gratzer offered expert testimony that he in fact was acting under the requisite "extreme mental or emotional stress" required to prove the lesser offense of mitigated deliberate homicide and the Court relied on the existence of this evidence in holding that Gratzer was entitled to a jury instruction on mitigated deliberate homicide. Gratzer, 682 P.2d at 145. Hans argues that his counsel, in providing misinformation to his own expert on the lesser offense, created the dilemma of not

20

having enough evidence to support the theory of mitigated deliberate homicide. Hans argues that if Dr. Tranel had realized that mitigated deliberate homicide encompassed a wider range of stressing factors than merely "heat of passion," his expert opinion on whether Hans' mental condition supported a mitigated deliberate homicide charge may have been different and ultimately would have persuaded Hans to go to trial rather than plead guilty. The record, however, indicates that Dr. Tranel was experienced in testifying on the issue of mitigated deliberate homicide and was aware of the correct statutory definition. Accordingly, we hold that the District Court's finding that defense counsel did not misinform his own expert is not clearly erroneous. Therefore Hans' argument that defense counsel was to blame for the lack of expert testimony as to the mitigated deliberate homicide theory fails. Dr. Tranel, aware of the correct statutory definition of mitigated deliberate homicide, ultimately would not testify that Hans was acting under "extreme mental or emotional stress" at the time of the shootings. Therefore, unlike in Gratzer, counsel did not have the foundational testimony to support a jury instruction on mitigated deliberate homicide.

Hans argues that in using "heat of passion" to describe "reasonable explanation or excuse" counsel suggested much too narrow a definition. However, even assuming, *arguendo*, that Hans had an expert willing to testify that he was acting under "extreme emotional stress," he does not offer any evidence that he would come within a broader definition of "reasonable excuse or explanation." Although Model Penal Code § 2 10.3 and § 45-5-103, MCA, no longer require "sudden" provocation, they still require an extreme emotional stress resulting from provocation of some sort, in the form of a reasonable excuse

21

or explanation. See State v. Dumlao (Haw. 1986), 715 P.2d 822, 829-31. Hans has not pointed to any conduct by the victim or circumstances at the school which would serve as a reasonable excuse (provocation) for his extreme emotional stress and the homicide.

As to defense counsel's overall preparation on the mitigated deliberate homicide theory we note that his records indicate that he spent at least twenty hours of legal research time on mental illness and mitigated deliberate homicide and defense counsel testified that he compiled notebooks full of legal research on statutes, jury instructions, and case law applicable to deliberate homicide and mitigated deliberate homicide. Any advice given to Hans regarding mitigated deliberate homicide, although not a strategic decision deserving of great deference, was not the product of neglect or ignorance on the part of defense counsel and, as such, his advice is given a slight presumption of falling within the wide range of reasonable professional assistance. Applying this standard to counsel's performance we hold that defense counsel's advice to Hans regarding the lesser offense of mitigated deliberate homicide was not deficient. Because we hold that counsel's performance was not deficient we need not address whether the alleged deficient performance prejudiced Hans.

Adequacy of Advice Regarding Mental Illness

Hans next alleges that his counsel did not adequately inform him of the "defense" of mental disease or defect. Hans alleges that his counsel's advice that there was no defense based on a mental disease or defect was erroneous and misleading. Hans argues that Dr. Tranel's deposition and the MSH evaluations were replete with information which could be

22

the basis for a showing of mental disease or defect that would rebut the State's proof that Hans acted "knowingly and purposely."

The State claims, and we agree, that although the MSH report and Dr. Tranel's deposition contained evidence that Hans did suffer from a mental disease or defect, neither the MSH experts nor Dr. Tranel would ultimately testify that Hans' mental defect prevented him from acting knowingly and purposely at the time of the shootings. Hans testified at the evidentiary hearing that his understanding of the mental disease or defect "defense," as explained by defense counsel, was that the defense was not available because "the Warm Springs Reports said essentially that I was not -- I was not mentally ill enough to -- to be found under that statute." This statement does not reflect a misapprehension of the evidence.

Although defense counsel could have presented a jury with evidence that Hans suffered from a mental disease or defect, defense counsel did not believe that this evidence would be persuasive in light of both parties' experts testifying that Hans acted with the requisite mental state to sustain a deliberate homicide charge. Even Hans' legal expert witness at the evidentiary hearing on the ineffectiveness claim admitted that the psychiatric experts' conclusions presented a problem for the defense.

Defense counsel's opinion that the defense theory of mental disease or defect was not a viable defense for Hans qualifies as non-strategic assistance and was the product of informed professional deliberation which he adequately conveyed to Hans. Therefore, we indulge a slight presumption that counsel's advice to Hans regarding the "defense" of mental

23

disease or defect falls within the wide range of reasonable professional assistance and, in this case, we hold that counsel's advice on this issue was not deficient.

(b) Mental Health Evaluations

Hans next alleges ineffective assistance of counsel regarding defense counsel's request for a mental health evaluation at MSH which was disseminated to the court and the prosecution. The State argues that we previously decided this issue in our denial of Hans' fourth claim for relief, which alleged that the District Court erred in ordering the mental health experts to report to the court and the prosecution. We held that the court did not err in ordering the reports sent from the Montana Youth Treatment Center and from Pine Hills to the court and to the prosecution since counsel for both parties stipulated to this procedure. Furthermore, we held that the court did not err in disseminating the third mental health report from MSH because § 46-14-203(3), MCA (1987), provided that the report of a mental health examination ordered by the court be disseminated to the court and both counsel. Because Hans was examined by his own expert whose report was not disseminated, the dissemination of the other reports did not violate Hans' right to have a competent psychiatrist assist in the evaluation of the defendant as guaranteed by Ake v. Oklahoma (1985), 470 U.S. 68, 83, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53, 66.

Although we held that Hans' statutory and constitutional rights were not violated by the dissemination of the MSH mental health reports in light of the fact that he was ultimately afforded his one "Ake" expert witness, we did not address the issues of whether defense counsel erred in stipulating to dissemination of the first two mental health reports, whether

24

counsel erred in requesting the evaluation at MSH in the first instance or whether he failed to inform Hans of his constitutional rights regarding the evaluation.

Dissemination of the Mental Health Reports

Hans alleges that despite the statutory provision mandating dissemination of a mental health report, defense counsel could have prevented the dissemination of the mental health reports. Hans cites Ake's holding that the State is required to assure the defendant access to a psychiatrist who will assist in the defense in support of his contention that defense counsel had alternatives to dissemination of the report.

In Smith v. McCormick (1990), 914 F.2d 1153, the Ninth Circuit Court of Appeals held that the procedure mandated by § 46-14-202, MCA (1985), did not satisfy an indigents's due process right to psychiatric assistance under Ake. Hans cites Smith for the proposition that § 46-14-202, MCA (1985), is unconstitutional and that defense counsel therefore had authority to oppose dissemination of the mental health reports. In Smith the Ninth Circuit Court of Appeals held that, given Ake's limitation of one mental health expert to assist indigent defendants, an indigent defendant's right under Ake is, in effect, violated by § 46-14-202, MCA's dissemination mandate because the defendant's one mental health expert is no longer serving the defendant's best interests. Smith, 914 F.2d at 1158-59. Defense counsel no longer has " ' "an adequate opportunity to present [his] [client's] claims fairly within the adversary system." ' " Smith, 914 F.2d at 1159 (quoting Ake, 470 U.S. at 77 (citation omitted)). Although this reasoning applies to the dilemma faced by Hans' counsel, defense counsel did not have the benefit of Smith when acquiescing in the dissemination of

25

the mental health report. As the United States Supreme Court warns of the danger in applying hindsight to assess attorney performance in <u>Strickland,</u> 466 U.S. at 689, it follows that subsequently decided case law cannot be used to judge an attorney's conduct at the time of representation. Furthermore, we have held that counsel is not ineffective for following a statute in effect at the time. <u>Lester Kills On Ton</u>, 901 P.2d at 1382-83. Therefore, we hold that defense counsel's acquiescence in dissemination of the mental health reports pursuant to § 46-14-202, MCA, is not grounds for a finding of ineffective assistance of counsel.

<u>Evaluation Conducted at MSH</u>

Hans also claims that defense counsel erred in having the evaluation conducted by state mental health professionals rather than by a defense expert. Hans' reasoning is that because <u>Ake</u> allows for only one expert, <u>Ake,</u> 470 U.S. at 79, defense counsel should have insisted on having his own expert, rather than MSH conduct the evaluation.   While defense counsel could have engaged a defense expert to conduct the court-ordered examination and report to the court and prosecution, the dissemination of the report was mandated by the statute.   It is apparent that if Hans' expert, Dr. Tranel, had prepared the court-ordered report, it would still have contained damaging conclusions regarding whether Hans committed the crimes while under the influence of mental disease or defect. Thus, in the final analysis, counsel's choice of engaging MSH evaluators to perform the evaluation rather than a defense expert caused Hans no prejudice. We therefore find that defense counsel was not ineffective for requesting and stipulating to the mental health evaluation at MSH.

26

Counsel's Advice Concerning the Evaluation Process

Hans alleges error in defense counsel's failure to advise him of his constitutional rights. to remain silent and advise him that the report could be used against him in future proceedings. The District Court found, and we agree, that a defendant has no constitutional right to be informed of his Miranda rights when, through his attorney, he has requested a psychiatric exam. Estelle v. Smith (1981), 451 U.S. 454, 468, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359,372; State v. Smith (1993), 261 Mont. 419, 427-28, 863 P.2d 1000, 1004-05.

The question remains however, whether counsel had a duty to inform Hans of the consequences of his participation in the evaluation. Hans cites to ABA Criminal Justice Mental Health Standard 7-3.6 (1989) which imposes upon an attorney a duty to fully advise and inform the defendant as to the nature and consequences of the evaluation. The comments state, that "[a]n attorney's obligation to explain stems from the responsibility to advise an accused client about all aspects of the case." We agree that informing a client of the consequences of a mental health evaluation, including how that information can be used, is part of an attorney's general duty to keep the client informed, regardless of whether the defense requested the evaluation. In holding that Smith's right to counsel was not violated by the district court's consideration of a psychiatric evaluation report, the Court in Smith noted that the defendant had an opportunity to consult with counsel prior to the psychiatric evaluation and that "counsel could have advised Smith of the State's possible use of the evidence obtained." Smith, 863 P.2d at 1006.

27

Additionally, in State v. Hess (1992), 252 Mont. 205,211, 828 P.2d 382, 386, this Court considered among other factors, that the defendant was represented by counsel before she underwent a compelled psychological evaluation in deciding that she was not entitled to Miranda warnings.

In both Smith and Hess, this Court relied on the fact that the defendant had access to counsel before undergoing a psychiatric evaluation in determining that Miranda warnings were not necessary. The Court's reliance on this fact was based on the assumption that before requesting an evaluation, counsel will provide advice regarding the potential consequences of participating in an evaluation. Consistent with that assumption, we hold that defense counsel had a duty to inform Hans of the consequences of his participation in the evaluation.

Defense counsel's testimony at the evidentiary hearing was that he "probably" told Hans the consequences of the evaluation. This is not sufficient to rebut Hans' claim that defense counsel failed to inform him of the consequences. Therefore, we hold that Hans has satisfied the deficiency prong of the Strickland test for ineffective assistance of counsel.

Under Strickland we must next ask whether counsel's deficiency prejudiced Hans. The State argues that since the case did not go to trial and since none of Hans' statements made during the evaluation were offered in evidence against him, he suffered no prejudice. However, defense counsel's advice to forego trial was based, in part, on counsel's reluctance to put Hans on the stand for fear of damaging cross-examination regarding statements he made during the evaluation. The State also claims that § 46-14-401, MCA (1985) (now § 46-

28

14-2 17, MCA) provided sufficient protection for Hans in the event the State attempted to introduce any of his statements at trial. Section 46-14-401, MCA (1985), provided:

> A statement made for the purposes of psychiatric examination or treatment provided for in this chapter by a person subjected to such examination or treatment is not admissible in evidence against him in any criminal proceeding, except a sentencing hearing conducted under 46-14-3 11, on any issue other than that of his mental condition. It is admissible on the issue of his mental condition, whether or not it would otherwise be considered a privileged communication, unless it constitutes an admission of guilt of the crime charged. In a hearing held under 46-14-3 11, the court may hear and consider any such statement even if it constitutes an admission of guilt.

Although this statute may provide protection in some cases against admission of incriminating statements, in Hans' situation, the only possible defense was based on his mental condition, which is not protected under the statute. Therefore, by participating in the evaluation, Hans was providing the prosecution with information on the only viable defense available to him. However, given that the only defense available to Hans was based on his mental health, defense counsel had to place his mental health in issue, and by statute, had to allow a mental health expert to conduct an evaluation and report to the court. Although Hans argues that the requirement of the court-ordered evaluation could have been satisfied without Hans' cooperation pursuant to § 46-14-203(2), MCA (1985) (instructing an evaluator to determine whether a defendant's refusal to participate is the result of a mental illness) we cannot say at this point in time that this tactic would have helped Hans' case. If Hans had refused to participate in the court-ordered evaluation, he could have precluded damaging information regarding his mental health from getting into the hands of the prosecution. However, Hans would still not have had a defense expert willing to testify that his mental

illness precluded him from forming the requisite mental state, or that it entitled him to the lesser offense of mitigated deliberate homicide. Had he refused to cooperate with a court-ordered evaluation, Hans would have effectively eliminated the possibility that the evaluation could be used to support his defense of mental disease or defect at the time of the offense. This tactic would have left him without a defense and certainly no greater reason to go to trial. Therefore, we find that Hans was not prejudiced by defense counsel's alleged failure to inform Hans of his right to remain silent during the mental health evaluation.

### (c) Ineffective Investigation and Preparation

Hans alleges that his counsel was ineffective in his investigation and preparation for trial, and that this deficient performance affected Hans' ultimate decision to plead guilty. Hans' primary contention is that defense counsel did not adequately pursue the defense of mental disease or defect or the lesser offense of mitigated deliberate homicide. Hans alleges that his counsel pinned his hopes first on a favorable evaluation from MSH and, after receipt of the unfavorable report, on a reversal of the decision to transfer the case to District Court. Hans alleges that from the date of receipt of the MSH report, to this Court's affirmance of the transfer of the case to District Court, some four and one-half months, defense counsel spent less than twenty hours on the case. Hans alleges that counsel should have been in contact' with mental health professionals as some form of mental illness defense was the only real defense available to Hans. Hans alleges further that his counsel was ineffective in his attempts to have a defense expert appointed to testify. Hans criticizes counsel for tiling the

alternative motion to have an expert appointed to assist only in trial preparation and for failing to pursue the appointment of an expert to testify at trial.

The record indicates that defense counsel's brief in support of his original motion for appointment of a defense expert sufficiently conveyed the applicable arguments on this issue. A hearing was held on the original motion for appointment of an expert in which defense counsel repeatedly argued that an expert should be appointed to testify on behalf of his client. After a hearing on the alternative motion, the court granted the motion for an expert to assist but denied counsel's request for an expert to testify at trial. The District Court found, and we. agree, that defense counsel's efforts to have a defense expert appointed were more than adequate and cannot be deemed ineffective because the court refused to grant the motion. Hans' argument that defense counsel created the problem by having MSH conduct the court-ordered evaluation in the first instance has already been addressed in the previous issue and need not be repeated here.

Although defense counsel was not prevented from pursuing other mental health experts after he received the MSH report and after the proceedings in District Court were stayed pending appeal of the transfer as claimed by the State, defense counsel's alleged lack of attention to the case during this period was not deficient. Immediately upon this Court's affirmance of the transfer, defense counsel began drafting his notice of intent to rely on mental disease or defect and contacted Dr. Tranel. We agree with the District Court that defense counsel's actions in seeking a defense expert were proper and timely.

Hans points to defense counsel's inability to name his defense witnesses twelve days before trial as evidence of his failure to adequately prepare. The District Court found that defense counsel's inability to name defense witnesses so close to trial was not out of the ordinary for a crime committed in front of so many people. The only possible defense witnesses were Hans' parents and mental health experts. Defense counsel had already identified Dr. Tranel as a possible witness contingent on the court's allowing his testimony. This was not deficient representation.

Allowing the Deposition of Dr. Tranel

Hans alleges that his counsel was ineffective for allowing the prosecution to depose his non-testifying expert witness. The State claims that, even though the court had denied defense counsel's motion to appoint a defense expert to testify, defense counsel intended to renew his motion to have Dr. Tranel testify, in which case the State would have been allowed to depose him. Section 46-15-323(4)(b), MCA (1985). At the time of Dr. Tranel's deposition, defense counsel had not renewed his motion nor had the court given any indication that it would rule differently upon a renewed motion. The District Court made no findings on this allegation of error. We note that whether or not defense counsel intended to renew his motion, it was not certain that the court would grant it and thus at the time of the deposition, Dr. Tranel was a non-testifying expert. As such, defense counsel need not have allowed the State to depose Dr. Tranel. State v. Davidson (1994), 266 Mont. 404, 412, 880 P.2d 1331, 1337. We hold that allowing the State to depose Dr. Tranel constitutes

deficient representation, but whether this constitutes ineffective assistance of counsel depends on whether Hans was prejudiced by counsel's error.

In allowing Dr. Tranel to be deposed, defense counsel permitted the State to discover that Dr. Tranel was of the opinion that Hans did not lack the requisite mental state nor did he exhibit mitigating factors to support the lesser offense of mitigated deliberate homicide. However, if defense counsel had refused to allow Dr. Tranel to be deposed unless and until the court granted the motion allowing Dr. Tranel to testify, the State would have ultimately been allowed to depose Dr. Tranel. On the other hand, if the court denied the motion and the State were not allowed to depose Dr. Tranel, Hans would have gained no advantage in plea negotiations because the State would have been aware that the Court had foreclosed the possibility of any defense expert testifying at trial. Therefore, although defense counsel erred in allowing the deposition of Dr. Tranel, Hans suffered no prejudice as a result of this error, and his claim of ineffective assistance of counsel on this issue must fail.

Summary of Investigation and Prenaration

Hans' claims of ineffectiveness in the investigation and preparation for trial imply that if counsel had been better prepared, the "defense" of mental disease or defect and the lesser offense of mitigated deliberate homicide would have been viable strategies upon which to go to trial. Whether or not defense counsel would have begun his investigation earlier, or had chosen his own expert to conduct the court-ordered mental health examination, or had prevented the defense expert from being deposed, the ultimate conclusion reached by the defense mental health expert was that Hans committed the crimes knowingly and purposely,

33

and that Hans did not exhibit mitigating factors which would have supported a decision to go to trial on the lesser offense of mitigated deliberate homicide.

Hans claims that a defense could have been presented at trial without the testimony of an expert. That would have left Hans' own testimony and the testimony of his parents as the only potential evidence of mitigating factors or the existence of mental disease or defect. Hans claims that he could not testify because he would then be cross-examined about admissions he made in the MSH report, which defense counsel erroneously requested. However, even if the report had been conducted by his own expert, the contents of the report would still have been disclosed to the court and the prosecution. See § 46-14-202, MCA (1985). In the end, defense counsel was faced with the prospect of going to trial with very little evidence to support either mitigating circumstances or mental disease or defect. And, although we agree with Hans that his guilty plea was not a "strategic decision" in the sense that it did not produce an advantage, Hans' limited options at this point were not due to defense counsel's failure to adequately investigate and prepare for trial. Hans' options were limited because of the facts of his particular situation.

### (d) Abandonment of the Appeal

Hans next alleges that his counsel rendered ineffective assistance by abandoning the appeal. Defense counsel filed a notice of appeal on July 29, 1988. The appeal was never perfected. Hans wrote his counsel a letter informing him that a new attorney would be retained by his father. Because defense counsel never heard back from Hans, Hans' father, or another attorney, and the deadline for filing the transcripts was nearing, counsel withdrew

34

the appeal. Defense counsel withdrew the appeal without consulting Hans or advising him that he had the right to have an attorney appointed on appeal.

A defendant has a right to the assistance of counsel on a first appeal. State v. Black (1990), 245 Mont. 39, 43, 798 P.2d 530, 532. The right to counsel on appeal includes the right to effective assistance of counsel. Evitts v. Lucey (1985), 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821, 830; Anders v. California (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, sets forth the procedures necessary for protecting a client's right to appeal and delineates the minimum standards for providing effective assistance of counsel on appeal.

In Anders the Court held that if, after a conscientious review, counsel concludes an appeal is wholly frivolous counsel must advise the court and request permission to withdraw. The request must be accompanied by a brief referring to anything in the record that might arguably support an appeal, and a copy of that brief should be sent to the defendant so that the defendant can respond with his or her own arguments. Anders, 386 U.S. at 744. In the instant case, defense counsel requested permission to withdraw but did not notify his client of the withdrawal nor did counsel submit the necessary brief. Defense counsel testified that he was aware of the Anders requirements.

The District Court agreed that defense counsel rendered deficient performance by failing to perfect the appeal but opined that Hans was not thereby prejudiced in view of Hans'. opportunity to appear before the sentence review board and in view of the court's findings on the ineffectiveness claims. Hans responds that prejudice is presumed where there has

been "[a]ctual or constructive denial of the assistance of counsel" either at trial or on direct appeal. Strickland, 466 U.S. at 692; Penson v. Ohio (1988), 488 U.S. 75, 88, 109 S.Ct. 346, 354, 102 L.Ed.2d 300, 313. We agree. Presumption of prejudice from a failure to protect the client's right to appeal is widely recognized. See. e.g., United States v. Nagib (7th Cir. 1995), 56 F.3d 798, 801; United States v. Horodner (9th Cir. 1993), 993 F.2d 191, 195. Prejudice is presumed when counsel abandons the appeal because the defendant is not merely deprived of effective assistance, he or she is deprived of any assistance of counsel. Castellanos v. United States (7th Cir. 1994), 26 F.3d 717, 718. Abandonment is a per se violation of the Sixth Amendment. Castellanos, 26 F.3d at 718; Nagib, 56 F.3d at 801.

The State contends that prejudice is not presumed if a post-conviction remedy is afforded. Citing Evitts, 469 U.S. at 399, and State v. Finney (Mont. 1997), 931 P.2d 1300, 54 St.Rep. 58. It argues that even if defense counsel's performance on appeal were deficient, since Hans is being afforded a post-conviction remedy, he is not prejudiced by counsel's errors. However, in Finney, we held that the defendant had been granted a remedy for his counsel's failure to follow Anders in that the defendant raised, and this Court considered, the same issue in his petition for post-conviction relief that he claimed he would have raised on appeal. Finney, 931 P.2d at 1304. In the instant case, Hans points to the existence of appealable issues arising from the sentencing phase of the prosecution that have been foreclosed from review on post-conviction relief because this Court will not entertain claims that could have been raised on direct appeal. Tecca v. McCormick (1990), 246 Mont. 3 17, 806 P.2d 11. Hans argues that the remedy for counsel's failure to protect Hans' right to

36

appeal is an out-of-time appeal. See Broeckel v. State (Alaska App. 1995), 900 P.2d 1205, 1208.

The State contends that the United States Supreme Court held in Evitts that a state's post-conviction proceeding serves as an out-of-time appeal remedy for counsel's ineffective assistance on the appeal. However, the Court in Evitts merely approved the use of state *courts' implementation* of post-conviction proceedings as an appropriate remedy for a defendant's having been denied a direct appeal. Evitts, 469 U.S. at 399.

Although, in Finney's post-conviction proceeding, we addressed issues which could have been raised on appeal, the question of whether those issues were properly before the court in post-conviction relief was not an issue and was not addressed. Finney, 93 1 P.2d at 1304. There was no discussion of our decision in Tecca and whether it precluded our consideration of issues which could have been, but were not, raised on appeal. Although the result in Finney certainly suggests that post-conviction relief serves as the equivalent of an out-of-time appeal, it is less clear that, in Finney, we were implementing such a rule for all similarly situated petitioners. It would thus be unfair to characterize Finney as establishing this Court's implementation of the post-conviction process as the equivalent of an out-of-time appeal.

Hans has brought to this Court's attention the dilemma posed by Finney and Tecca. Although Finney appears to provide a remedy for abandonment on appeal by way of post-conviction relief, Tecca limits post-conviction claims to those that could not have been raised on appeal. Hans argues that the constraints of Tecca foreclose his ability to raise the

37

appealable issues arising out of sentencing in this post-conviction proceeding. That is, since they could have been raised on appeal, they cannot be raised in a post-conviction proceeding. For this reason, Hans claims that an out-of-time appeal is the appropriate remedy.

To resolve the confusion created by the anomalous results in Finney and Tecca, we now hold that all claims foreclosed from appeal because of counsel's abandonment on appeal may be raised in a post-conviction petition. Since Hans has adequately raised the sentencing issues in his post-conviction petition, but has declined to fully address the merits of those issues because of the procedural constraints set forth in Tecca, we will allow him to further amend his petition for the sole purpose of fully addressing the sentencing issues.

Issue Two

> Whether Hans' guilty plea was entered knowingly, voluntarily, and intelligently.

Hans alleges that his guilty pleas were not entered knowingly, voluntarily and intelligently with a full understanding of the consequences of entry of the pleas or the nature of the constitutional protections he was waiving. Section 46-16-105(2), MCA, states that a court may permit a guilty plea to be withdrawn and a non-guilty plea substituted, for good cause, at any time before or after judgment. We reserved ruling on this issue in our August 25, 1994 Order until disposition of the ineffective assistance of counsel claim because "ineffective assistance of counsel constitutes 'good cause' for withdrawal of a guilty plea, State v. Senn (1990), 244 Mont. 56, 795 P.2d 973." Following the Strickland test for ineffective assistance of counsel in regard to a guilty plea, the defendant must demonstrate

38

that, but for counsel's deficient performance, a defendant would not have entered a guilty plea. Hill, 474 U.S. at 59; State v. Johnson (1995), 274 Mont. 124, 130, 907 P.2d 150, 154.

Where "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " Hill, 474 U.S. at 56 (citation omitted). We have held in this Opinion that defense counsel rendered ineffective assistance only on appeal. Because we hold defense counsel rendered effective representation of Hans leading up to his guilty pleas, we reject his request to withdraw his guilty pleas on the basis of ineffective assistance of counsel.

Furthermore, the Judge's inquiry of Hans as to his understanding of the charges, possible defenses, and possible consequences of pleading guilty was thorough and satisfies our standard of voluntariness under State v. Lewis (1978), 177 Mont. 474, 582 P.2d 346. Additionally, Hans stated that he based his decision to plead guilty not only on the advice of defense counsel but also upon the advice of a second attorney who concurred with defense counsel's advice.

Because the record demonstrates that Hans voluntarily pled guilty upon the advice of defense counsel who rendered effective assistance of counsel, we deny Hans' first claim for relief.

Issue Three

> Whether the mental health evaluators' failure to advise Hans of his right to the presence of counsel, his right not to submit to the evaluation, and that any

39

statements could be used against him violated Hans' rights to due process and assistance of counsel, and his privilege against self-incrimination.

In our August 25, 1994 Order we reserved decision on this issue pending disposition of the claim of ineffective assistance of counsel. The State argues that even if Hans could show that the mental health professionals violated his right to counsel and right against self-incrimination, he waived this claim upon his proper plea of guilty. We agree. It is well established that a plea of guilty which is voluntarily and understandingly made constitutes a waiver of non-jurisdictional defects and defenses, including claims of constitutional violations which occurred prior to the plea. Stilson v. State (1996), 278 Mont. 20, 22, 924 P.2d 238, 239; Hagan v. State (1994), 265 Mont. 31, 35, 873 P.2d 1385, 1387. Since we have held that Hans' pleas of guilty were voluntarily and understandingly made, and since his claim of violation of Sixth and Fifth Amendment privileges are non-jurisdictional defects, see Hagan, 873 P.2d at 1387-88 (finding claims of due process of law non-jurisdictional and waived in post-conviction proceedings) we hold that Hans waived this claim. Therefore, we deny Hans' fifth claim for relief.

We hold that Hans was not denied effective assistance of counsel, except as to the appeal, and that his guilty pleas were knowing and voluntary. Accordingly, we grant Hans the right to amend his petition for post-conviction relief in order to more fully address the sentencing issues. We hereby grant Hans 45 days from the date of this Opinion to tile with this Court his second amended petition for post-conviction relief addressing the sentencing issues only; the State is granted 30 days from the filing of Hans' second amended petition in

40

which to respond, and Hans is granted 14 days from the filing of the State's response in which to reply. We hereby deny Hans' remaining claims for relief.

_____
Justice

We   concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

41